[No. 25376. Department One. September 24, 1935.]

ARTHUR LEHRMAN, *Respondent,* v. ELSA M. LEHRMAN, *Appellant.*[1]

*L. R. Gillette,* for appellant.

GERAGHTY, J.—This appeal is from an interlocutory decree of divorce. The case is somewhat unusual and drab and sordid in its details. While the record is otherwise voluminous, the testimony taken at the hearings is not included in the statement of facts. The respondent has made no appearance in this court.

Owing to the circumstances and the earnestness of appellant's counsel, we recite the facts more in detail than would otherwise be necessary. Respondent, Arthur Lehrman, instituted this action for divorce against his wife, Elsa M. Lehrman, by complaint filed in July, 1931. As grounds for divorce, he alleged cruel and inhuman treatment, the wife's keeping company with another man, and that, on or about the 5th day of March, 1931, she had departed with this man and had cashed or attempted to cash checks in sums aggregating four thousand dollars.

[1]Reported in 49 P. (2d) 41.

The appellant appeared by her attorney and moved for alimony during the pendency of the action, and also that the venue be changed to Stevens county, Washington, where she then was with her parents. In an affidavit supporting her motion, she denied that she had run off with another man, the fact being that, with the full knowledge and consent of her husband, she had merely ridden with him to Wenatchee; that she had some disorders which affected her mentally; that, during such time, she did cash some checks illegally; that she had undergone an operation, resulting in the clearing of her mind; that the facts were known to the prosecuting officers of Chelan county, who had not prosecuted her under the circumstances; that her husband had filed a petition in bankruptcy to avoid hospital and medical bills incurred by her; and that he had always treated her in a cruel manner.

She alleged misconduct on the part of her husband. She alleged that she possessed no means to contest the action or to protect her property rights and was unable to work, while the husband was a strong man and able to assist her. She asked for an allowance to contest the action and twenty-five dollars a month during the pendency of the suit. She alleged that she and her husband were the owners of a contract interest in a twenty-acre tract of land in Okanogan county, purchased on deferred payments, and that her husband was endeavoring to deprive her of her interest in this contract.

Thereafter, the court made an order reciting the filing of the motions for temporary alimony and suit money and the accompanying affidavit, and the fact that appellant had failed otherwise to file any papers or pleadings in the cause, and directing her to file her papers forthwith or default would be entered against her. Pursuant to this order, the appellant

filed an answer and cross-complaint October 30, 1931, in which, after denying the allegations of misconduct contained in the complaint, she, by way of cross-complaint, alleged inhuman treatment by the respondent, a quarrelsome and fault-finding disposition, and his correspondence with another woman. That, during the year 1930-31, she was obliged to undergo a major operation; that the husband refused to allow her any funds or to incur any medical expenses; and that, after the operation, he filed a petition in bankruptcy to avoid payment of the expenses. In her prayer, she asked that respondent's complaint be dismissed, and that she be granted an interlocutory decree of divorce from him and be awarded the sum of forty dollars per month permanent alimony, a reasonable attorney's fee, and an equitable division of their property interests.

The case was heard November 9, 1931. At the conclusion of the hearing the court announced that the respondent was entitled to an interlocutory decree of divorce. The entry on the clerk's minute book, signed by the trial judge, follows:

"The Court after hearing the arguments of counsel and duly considering the evidence offered decided: That the plaintiff was entitled to an interlocutory decree of divorce. That the defendant was entitled to her costs in the action and that a judgment for $65.00 would be signed a just balance due her from the plaintiff for such costs.

"These minutes are hereby approved.

"WM. C. BROWN, JUDGE."

No formal decree was entered at the time, and the case stood in this position until October 19, 1933, when the appellant appeared and moved the court that the decision announced November 9, 1931, be vacated and set aside, and that the court grant a new trial for the purpose of rehearing the issues of fact in the

case. The motion recited that newly discovered evidence, material for the appellant and which she could not, with reasonable diligence, have discovered and introduced at the trial, had been found; that the respondent was guilty of fraud; that the evidence was insufficient to justify the decision.

In a supporting affidavit, appellant alleged that, notwithstanding the fact that no decree had been rendered, the respondent had assumed to marry another woman and was then living with her. The respondent filed an affidavit controverting the allegations of appellant's application, although making no reference to the charge that he had illegally attempted to marry another woman.

With reference to the appellant's charge that he attempted to conceal from her his interest in the land contract, he stated that, at the trial, he had offered to give the appellant a quitclaim deed to the premises if she would assume the obligations outstanding against the property; that he had not paid anything on the purchase price or interest for over two years and was living on the premises as a tenant from month to month.

December 4, 1933, the case being before the court upon the motion of the appellant for an order vacating the decision of November 9 and granting a new trial, the court filed a memorandum opinion in which he said:

"No proposed findings have ever been presented to this court in this case by either party. No proposed interlocutory decree has ever been presented. Furthermore, no statutory fee has ever been paid to the clerk of this court for the entry of an interlocutory decree herein.

"The first time after Nov. 9th, 1931, that this case was again brought to the official notice of the court was on Tuesday, November 14th, 1933, when defen-

dant's motion for the setting aside of the heretofore rendered decision and for a new trial came up on the motion docket on said last mentioned day. Mr. Guy W. Smith appeared as attorney for plaintiff in opposition to the motion. Mr. Albert I. Kulzer of Chewelah, attorney for the defendant, did not personally appear, but submitted defendant's motion per a letter written to the Clerk, which letter was given to the Court.

"The court took the matter under consideration and has held it under consideration ever since.

"I have concluded to deny the motion for new trial which is now made. I doubt if the plaintiff deceived the court at the trial and I am inclined to hold against the defendant's motion in so far as it is presented on that ground. Furthermore, I do not think it would be a forward step, under all the circumstances, to grant a new trial of this case at this time. An order granting a new trial at this juncture is not the proper thing to do in any view of the case in my opinion.

"However, the situation before us judging from surface indications, presents a miserable state of affairs. The court is not adequately advised as to exactly what has happened and I am not passing any fixed opinion at this time. But it looks as though somebody has been grievously at fault on the plaintiff's side of the case. It is admitted that the plaintiff went through a marriage ceremony with another woman about six months ago. What excuse, if any, he is going to offer for that, I do not know.

"I have concluded that I am going to sign no interlocutory decree in this case till we have a hearing and get a disclosure as to how the present situation has come about and who is responsible for it. I feel that I should insist on that out of a proper regard for the dignity and prestige of the court over which I am privileged to preside. I will order that the defendant's attorney, Mr. Albert I. Kulzer of Chewelah, be duly notified of the time of such hearing, and we will also request the prosecuting attorney to be present, and as above stated, no interlocutory decree will now be signed until such hearing is held and an inquiry be made into the present situation and who is

to blame for bringing it about or permitting it to develop."

On June 30, 1934, the respondent and appellant, being represented by attorneys, Mr. L. R. Gillette of Okanogan having succeeded Mr. Kulzer as attorney for appellant, the court concluded that all motions and applications of the appellant should be denied, and that findings and an interlocutory decree should be signed in accordance with his oral decision, announced November 9, 1931. In the course of a lengthy opinion covering the proceedings in the case, the trial court said:

"It now appears that the plaintiff, Lehrman, continued right along after the new trial application and hearing, which occurred in the fall of 1933, to live with the woman whom he bigamously married. No move was made by Lehrman or his attorney Guy W. Smith, to bring about the hearing suggested by the court in the memorandum decision of December 4th, 1933, nor was there any move whatsoever made at any time during the months immediately following December, 1933. However, in about February or March, 1934, the first wife, Elsa Lehrman, began getting active in regard to the situation, and these activities on her part seemed to have stirred the plaintiff and his attorney to make some further effort towards getting something done in the divorce matter, and these agitating activities on the part of the first wife appear also to have been a moving factor in bringing about the criminal prosecution against the plaintiff, which prosecution was initiated on May 3, 1934, by the filing of an information in the Superior Court of Okanogan County charging Lehrman with bigamy. . . .

"The jury returned a verdict of 'not guilty.' How and by what process of reasoning the jury arrived at that verdict is unknown to the court. . . . Yet the fact is certainly inescapable that this court must consider that question in now determining as to whether or not we should follow up our decision made

on November 9, 1931, to grant the plaintiff a divorce. Upon that question there is no doubt in my mind. The evidence in the criminal trial convinced the court beyond the shadow of a doubt that both Lehrman and Mrs. Mallory were entirely honest and acted in complete good faith in entering into the marriage they contracted at Republic on June 10th, 1933. As to the co-habitation subsequent to the said marriage and especially as to the co-habitation subsequent to the counter attack which was made by the first wife in the form of a motion for new trial, and which attack was launched in September, 1933, I must say that said co-habitation which was thus continued in definace (defiance) of the revelations thereby brought about, is not so easy to condone. It would certainly have been the part of wisdom on the part of Lehrman and Mrs. Mallory to have made an immediate and searching survey of the situation at once when that new trial matter came up in September, 1933. The only way I can account for it is that they were just too dumb to understand, and yielded to taking the course of least resistance, which was to drift along, following the advice of their said lawyer. After a very considerable amount of reflection, I have concluded to take that view of the matter. It seems clear to me that the best way out of this mess is to grant the divorce. Not the least of these considerations being that the second wife is now about to become a mother as a result of the co-habitation under the bigamous marriage.''

In accordance with the conclusion announced in this opinion, an interlocutory decree was entered, granting the respondent a divorce and requiring him to pay the sixty-five dollars ordered to be paid in the first decision, less small sums that appeared from the record to have been theretofore advanced to appellant's attorney.

We are asked upon this appeal to reverse the decree of the trial court, reached after much deliberation. We are not disposed to do this. As the trial

court said in one of his opinions, the case is a "mess," and we cannot say that he did not, under all the circumstances, do what was best, in view of the tangled web in which the parties had become enmeshed.

Condoning nothing that was charged or proved against the respondent, the appellant can be advantaged in no way by undoing what has been done. She herself, in her cross-complaint, asked for a divorce. While the divorce was granted to the husband, she, nevertheless, has her freedom. The record discloses no substantial property involved. The twenty-acre irrigated tract, whatever its value, was not paid for. One-half interest in the contract was owned by respondent's brother. The parties here owned the other half of the contract. The court found that the respondent was in default for interest and taxes in a sum in excess of thirteen hundred dollars. The equity could have but little, if any, value.

As to the question of alimony, on the surface it would seem that some provision should have been made for the appellant. However, upon this question, it is the rule that considerable discretion must necessarily be reposed in the trial court. This is equally true as to the allowance of attorney's fees and suit money. *Lee v. Lee,* 3 Wash. 236, 28 Pac. 355; *Willey v. Willey,* 22 Wash. 115, 60 Pac. 145, 79 Am. St. 923; *Arey v. Arey,* 22 Wash. 261, 60 Pac. 724; *Griffith v. Griffith,* 74 Wash. 284, 133 Pac. 443; *Fitzpatrick v. Fitzpatrick,* 105 Wash. 394, 177 Pac. 790. Since the evidence introduced at the two hearings is not before us, we must assume that the conclusions of the trial court were warranted.

The decree will be affirmed.

MAIN, TOLMAN, HOLCOMB, and BEALS, JJ., concur.