[No. 28021. Department One. September 17, 1940.]

LAWRENCE WARNING, *Appellant*, v. KATIE WARNING, *Respondent*.[1]

[1]Reported in 105 P. (2d) 715.

*Nuzum & Nuzum,* for appellant.

*Robertson & Smith,* for respondent.

MAIN, J.—The plaintiff, the husband, brought an action for divorce. In the complaint, he charged his wife with having repeatedly accused him of being intimate with other women. The defendant, in her answer, denied this allegation and, by cross-complaint, sought a decree giving her an allowance as separate maintenance. The trial resulted in findings of fact from which the court concluded that the plaintiff was entitled to a divorce. An interlocutory decree of divorce was entered, and in it there was a division of the property and an allowance of alimony to the defendant in the sum of fifty dollars per month until her remarriage or until the further order of the court. From this decree, the plaintiff appealed, reciting in the notice of appeal that he especially appealed from that portion of the decree which awarded the alimony.

The parties were married October 2, 1920. As a result of the marriage, no children had been born. The action for divorce was brought October 30, 1939.

The questions presented upon the appeal are (a) whether the respondent was entitled to alimony; (b) whether the amount allowed was too large; and (c) whether the court erred in providing that the alimony should continue until the further order of the court.

We shall first consider the question of whether the respondent was entitled to alimony. Rem. Rev. Stat., § 989 [P. C. § 7508], provides that, in granting a divorce, the court shall make such disposition of

"  . . .  the property of the parties as shall appear just and equitable, having regard to the respective

merits of the parties, and to the conditions in which they will be left by such divorce, and to the party through whom the property was acquired, . . ."

While alimony for the wife is not specifically mentioned in the statute, it has been held that it is included within the phrase "property of the parties." *In re Cave,* 26 Wash. 213, 66 Pac. 425, 90 Am. St. 736; *Krieg v. Krieg,* 153 Wash. 610, 278 Pac. 223. Even though the divorce decree was entered on account of the fault of the respondent, this does not in itself deprive her of the right to an allowance as alimony. *Nerland v. Nerland,* 173 Wash. 311, 23 P. (2d) 24; *Theis v. Theis,* 196 Wash. 667, 84 P. (2d) 369.

■ The next question, then, is whether, in view of the facts and circumstances in this case, the respondent was entitled to any allowance as alimony. At the time of the trial, the parties owned real and personal property as follows: The home in which they had resided ever since their marriage, and its furnishings, upon which the appellant, prior to the marriage, had paid the sum of eight hundred and fifty dollars, of the approximate value of two thousand dollars; an acre tract, unimproved, of the value of six hundred dollars; an equity in an automobile, two hundred and fifty dollars; and shares in what is referred to as the Hilliard Holding Company, the value of which may be somewhat problematical, but there is evidence that indicates that it was probably worth about one hundred dollars. The home and the furnishings were given to the wife, and the other items to the husband. It thus appears that the allowance to the wife, in value, was a little more than one-half of the value of the property given to the husband.

At the time of the entering of the decree, and for twenty-four years prior thereto, the appellant was, and had been, a railway locomotive fireman, with seniority

rights based upon that length of service, and was earning, at the time of the trial, and for some months prior thereto, two hundred and twenty-five dollars per month. Some years before, when the recent depression was at its lowest ebb, his earnings were very much less. Prior to her marriage, the respondent was a beauty parlor operator, and during their marriage she had done some work in their home as a marceller. She had no equipment for making permanent or finger waves. There was little demand for marcelling, as the beauty parlor operators now largely give either permanent or finger waves.

At the time of the trial, the respondent was not in good health, as appears from her testimony and that of the appellant. The latter testified that he had, three or four times during some months prior to the time that he left the home, urged her to go to the hospital for an appendectomy. The appellant makes no complaint about the division of the property. In fact, he stated in his testimony that he was always willing that the respondent should have the home, furniture, and the holding certificate.

There is no fixed rule with reference to the allowance of alimony. Each case must necessarily depend upon its own facts and circumstances, and the allowance of alimony is, to a considerable extent, within the discretion of the trial court. *Underwood v. Underwood,* 162 Wash. 204, 298 Pac. 318; *Lehrman v. Lehrman,* 183 Wash. 649, 49 P. (2d) 41.

The evidence is not very satisfactory on the matter of the condition of the respondent's health, there being no medical testimony. Reference, however, is made in respondent's brief to what is referred to as exhibit 6, which is said to be a doctor's certificate showing her condition. That so-called exhibit, as the statement of facts shows, was not at any time introduced in evidence,

and could not be considered even if it had been brought here, which it has not.

In view of the testimony of both parties as to the respondent's condition of health and the earning capacity of the appellant at the time of the trial and for some months prior thereto, we are of the view that the trial court did not err in awarding the respondent the sum of fifty dollars per month as alimony.

The last question is whether the trial court erred in providing that the alimony should continue until the further order of the court. This is referred to by both of the parties, and is referred to in some of the cases, as permanent alimony. It is permanent in the sense that it continues until there is a change of conditions. If there should be a change of conditions, such as the lessening of the appellant's earnings or the restoration of the respondent to health, by reason of an operation or other medical attention, the appellant, upon his application, would be entitled to a hearing on the matter. In saying this, we do not mean to be understood as indicating what the result should be if there were such a hearing. The complaint of the appellant in this regard is because the trial court did not fix a lump sum or determine the period over which the payments should continue and at the end of which they would cease.

Our attention is called to the case of *Lockhart v. Lockhart*, 145 Wash. 210, 259 Pac. 385, where it was said, in effect, that it was against the policy of the law to give a divorced wife a perpetual lien upon her divorced husband's future earnings, except under the most unusual circumstances. That was said, however, in a case where the wife brought the action, and in the opinion it was pointed out that it would be but just, in the case of separate maintenance, to allow the wife to share a portion of the husband's earnings so long as he should continue in his objectionable conduct. In

this case, it was the appellant husband that brought the action for divorce, and not the respondent. In the cross-complaint of the respondent, she resisted the action for divorce and sought a decree for separate maintenance.

If this distinction be not sound, then, from the facts above stated, taking into consideration the condition of the respondent's health and the fact that, even though her health be restored, it would take her some time to be able to reestablish herself as a beauty parlor operator, this would be an unusual circumstance. The trial court did not err in decreeing that the alimony should continue until the further order of the court.

The decree appealed from will be affirmed.

BLAKE, C. J., MILLARD, ROBINSON, and SIMPSON, JJ., concur.

