[No. 30141.   Department Two.   November 17, 1947.]

HEYWARD A. DEER, *Respondent*, v. STELLA WEBBER DEER, *Appellant*.[1]

[1]Reported in 186 P. (2d) 619.

*Thomas D. Kelley* and *Gallagher, Myers, Kelley & O'Sullivan,* for appellant.

*Ralph B. Potts,* for respondent.

STEINERT, J.—Two appeals are involved in this action: (1) defendant's appeal from that portion of an interlocutory order of divorce wherein the court ratified and confirmed a stipulation, made in open court by the parties through their counsel, purporting to effect a division of community property; and (2) defendant's subsequent appeal from an order denying her motion for modification of the interlocutory order and for vacation of the property settlement agreement. The two appeals were combined and consolidated for hearing and disposition by this court.

Respondent, Heyward A. Deer, and appellant, Stella Webber Deer, are husband and wife, having intermarried December 2, 1939. There was no issue of the marriage.

In February, 1946, respondent instituted in King county an action for divorce from appellant on the ground of cruelty and personal indignities inflicted upon him by appellant. With reference to the property acquired and owned by the parties, the complaint alleged:

"That the parties have acquired as community property during their married life an equity, the exact value of the same not being known to the plaintiff [respondent] at this time, in approximately 1⅓ acres on the Seattle-Tacoma Highway, upon which real estate there is located seven tourist cabins, a service station and grocery store with living quarters attached, and a small portable machine shop. That the address is 18834 Pacific Highway South, Seattle, Washington; That the parties have also acquired a 1937 Dodge coupe and that the plaintiff has a $1000.00 insurance policy upon his life with the defendant [appellant] named as beneficiary therein, the exact cash surrender value of said policy of life insurance not being known to plaintiff at this time."

Nowhere in the complaint was a legal description of the real estate given.

In the prayer of his pleading, respondent asked that the court make an equitable division of the community property and that the policy of life insurance be set over to him.

Appellant, appearing through her attorneys, Messrs. Monheimer, Schermer, and Mifflin, filed an answer admitting all of the allegations of the complaint except the charges of cruelty, and further alleging, by way of cross-complaint, that respondent had inflicted cruel treatment and personal indignities upon her, rendering her life burdensome. In her pleading, she listed and described the community property in virtually the same manner and to the same extent as was set forth in respondent's complaint. In her prayer, she asked for no relief other than that respondent's complaint be dismissed with prejudice.

In his reply, respondent denied the affirmative allegations of the answer and cross-complaint, except in so far as they had been specifically admitted or pleaded in his complaint.

Upon the issues thus joined, the cause came on regularly for trial before Honorable James B. Kinne, one of the judges of the superior court for King county. The statement of facts

filed in this court does not contain a transcript of any part of the evidence introduced at that trial, except a copy of a purported "oral stipulation as to division of property," which apparently was dictated into the record by counsel during the progress of the trial, and upon which both parties now rely for support of their respective contentions. The stipulation, consisting of the dictation by Mr. Mifflin, representing the appellant, followed by questions asked by the court and answered by respective counsel, is too long to be set forth in its entirety, being seven typewritten pages in length. We shall quote only certain portions thereof and give a general statement concerning the remainder.

The introductory paragraphs of the stipulation as dictated by Mr. Mifflin described the community property as follows:

"These parties are the owners of a piece of property located just south of Bow Lake on the Tacoma-Seattle Highway. The exact legal description I do not have, but it is two hundred feet on the highway; it faces two hundred feet on the highway and extends back. It is an acre and a third altogether.

"It is an auto cabin camp and gas station, and a small machine shop in which Mr. Deer works during his spare time.

"There is located there some personal property, including this machine shop, an auto, stock of gas, and inventory of this gas station, together with the equipment and necessary property to operate a cabin camp.

"There is owing on the property,—it was purchased on a contract,—in the neighborhood of $11,325, approximately."

It will be noted that no legal description, sufficient in itself to identify the real property, was given.

The stipulation then proceeded:

"The parties have now agreed that the plaintiff [respondent] will pay to the defendant [appellant], or will have a deposit and a firm offer placed in an escrow company, for the sum of $5,000 within ten days from today, and that the plaintiff will then have ninety days from date within which to complete his negotiations and turn over to the defendant the sum of $5,000 cash.

"At that time he will also execute to the defendant a note in the amount of $5,000, with interest at five percent, payable at the end of two years; said note to be secured by this prop-

erty and subject to the now outstanding indebtedness of $11,325, and an additional $5,000, which the plaintiff will raise to pay the defendant."

Next followed a provision that if, at the end of thirty days, it should transpire that the required amount of five thousand dollars cash had not been deposited as above arranged, the attorneys for the parties should then, as agents of their respective clients, sell the real property and so much of the personal property as had not been otherwise distributed. Such sale, or sales, were to be consummated under the conditions and in the manner following: The real property was not to be sold for less than thirty thousand dollars; the respondent and appellant bound themselves to execute all documents, agreements, and deeds necessary to the sale, or sales; all proceeds of sale were first to be applied to the costs thereof, including real-estate commission, title insurance, and other expenses, then to the payment of any amount owing on the outstanding contract, then to the payment of attorneys' fees in the sum of three hundred fifty dollars to each party's attorney, and the balance, if any, to be divided equally between the parties; and any contract evidencing such sale was to be placed in escrow in some bank and the proceeds thereof, as paid, divided equally between the parties.

The stipulation next contained a provision that, if respondent should elect to deposit the five thousand dollars cash in escrow and deliver the note for an additional five thousand dollars, as first above stipulated, he should continue to pay to appellant support money in the sum of one hundred dollars a month until the five thousand dollars cash previously referred to was actually paid to appellant.

Specific provision was then made for division between the parties of certain named items of personal property, and another paragraph provided that if respondent should elect to purchase the real property he should have as his separate property the machine shop located on the real estate, and appellant should have the Dodge automobile.

The concluding portion of the stipulation as dictated by Mr. Mifflin read as follows:

"It is further stipulated that should the agents above appointed be unable to sell the real property for in excess of $30,000, within one hundred and twenty days from date, that at that time each party shall appoint one appraiser and the two appraisers a third appraiser, for the purpose of appraising the property, which shall be divided in two equal parts, from the east boundary to the west boundary, approximately, of which the south one-half would consist of the cabin camp and the north one-half of the service station and machine shop, and the said appraisers shall value each half separately;

"That the plaintiff [respondent] shall receive the north half and the defendant [appellant] the south half;

"That the party receiving the half appraised in a greater · amount shall have one year from the date of purchase to pay the other party the difference in value."

At this point in the dictation, the trial court made inquiry of counsel regarding several features of the stipulation and was thereupon specifically told by both counsel that the property division was to be an equal one between the parties so far as values were concerned; that appellant was to receive the sum of $10,000, of which $5,000 was to be in cash, and $5,000 evidenced by a promissory note; that the $5,000 cash was to be raised by respondent by placing a mortgage against the real property in the total sum of $16,350, which was to include the amount of $11,325 then owing on the outstanding contract; and that the $5,000 note should also be secured by the real property, but subject and junior to the $16,350 mortgage.

At the conclusion of the trial at which this stipulation was made and entered, the court made findings of fact to the effect that each of the parties had been guilty of cruel treatment of the other; that the community property of the parties was as set forth in the stipulation; and that the stipulation equitably divided the property. Upon these findings, the court on July 23, 1946, entered an interlocutory order, which by its terms awarded to each of the parties a divorce from the other and ratified and confirmed the stipulation concerning the division and distribution of the property, but did not incorporate the stipulation in the interlocutory order nor by reference make it a part thereof. Beyond such con-

firmation and ratification, however, neither the findings of fact nor the interlocutory order made any reference to the real property, nor did either of them contain a legal description thereof.

From all that appears in the record presented to us, it is fairly inferable and, in the absence of a statement of facts certified by Judge Kinne concerning the proceedings had before him, it must now be presumed that, during the course of the trial, appellant amended the prayer of her answer and cross-complaint by asking that she be awarded a divorce from respondent and that the court make an equitable division of the property.

On August 8, 1946, about two weeks after the entry of the interlocutory order, Messrs. Monheimer, Schermer, and Mifflin withdrew as attorneys of record for appellant, and her present counsel were substituted. On the same day, appellant, through her present counsel, filed in the superior court a motion for modification of the interlocutory order and for vacation of the property settlement agreement. The grounds of her motion were: (1) that the stipulation contained no legal description of the real property sought to be divided; (2) that in the stipulation no provision was made regarding the ultimate ownership of the real property as between respondent and appellant; (3) that the security given to the appellant for the five-thousand-dollar note was manifestly insufficient and unfair, in that it was but a third lien or mortgage on the real estate; (4) that the stipulation was of such complex and uncertain nature that it was neither understandable nor understood by the appellant at the time of its dictation and entry; and (5) that, contrary to the intent of the parties and of the trial court, the stipulation did not constitute an equal division of the property.

A show cause order was duly issued and on August 20, 1946, the matter came on for hearing on the motion before Honorable Chester A. Batchelor, one of the judges of the superior court for King county. The stipulation, the affidavits of the respective parties, and oral testimony at length were submitted to, and considered by, the court. The testimony was conflicting.

At the conclusion of the hearing, the court rendered an oral decision, holding that appellant had fully understood the terms of the stipulation and was satisfied with it at the time it was made; that its terms were clear and understandable; and that, under the evidence before the court on the pending motion, the stipulation accomplished an equal and equitable division of the property. The oral decision concluded with a denial of appellant's motion, and thereafter, on December 13, 1946, the court entered a formal order to that effect.

In the meantime, on October 4, 1946, appellant gave written notice of appeal from that portion of the interlocutory order of divorce wherein the court, through Judge Kinne, ratified and confirmed the stipulation with reference to the division of the property. On December 14, 1946, appellant gave similar notice of appeal from the order wherein the court, through Judge Batchelor, denied her motion for modification of the interlocutory order and for vacation of the property settlement agreement.

In his brief, respondent makes an initial contention that the appeal from the interlocutory order of divorce cannot be considered by this court because no notice of appeal was given within the thirty days prescribed by statute and the rules of court. In the absence of any specific citation by respondent, we assume that he has reference to Rem. Rev. Stat., § 308-10 [P.P.C. § 93-19], and Rule of Supreme Court 5 (1), 18 Wn. (2d) 4-a.

That statute and that rule have no application to an appeal from an interlocutory order of divorce. Such appeals are governed by Rem. Rev. Stat. (Sup.), § 988 [P.P.C. § 23-15], which allows for that purpose ninety days after entry of the order. *Sinnott v. Sinnott*, 27 Wn. (2d) 520, 179 P. (2d) 305. The appeal was taken within the ninety-day period and was therefore timely.

Appellant in her brief makes twenty assignments of error. Under these assignments, her principal contentions are (1) that she had misunderstood the terms of the property settlement agreement as set forth in the stipulation; that it had

been effected through mistake, inadvertence, and to her surprise; and that it constituted a fraud upon the trial court; (2) that for several reasons, hereinafter noted, the stipulation was not a complete, adequate, valid, and effective property division between the parties; (3) that the attempted property division agreement was not just and equitable to appellant; (4) that in the second hearing she should have been awarded costs, attorneys fees, and temporary monthly support; and (5) errors in the admission of certain evidence, and in the refusal to admit other evidence.

As indicated above, the statement of facts in this case does not contain a full transcript of the evidence submitted in the original trial before Judge Kinne, but only a copy of the stipulation dictated into the record in the course of that proceeding. Consequently, we are not conversant with everything that may have transpired at that hearing in the way of evidence, admissions, or other stipulations inducing the trial court to make and enter its findings and interlocutory order. Hence, we are in no position to determine, on the appeal from Judge Kinne's order, whether or not any error as assigned by appellant was committed by the court. We therefore turn our attention, and confine ourselves, to the subsequent appeal from the order made by Judge Batchelor denying modification of the interlocutory order of divorce and vacation of the property settlement agreement.

The evidence taken before Judge Batchelor purports to delineate what occurred at and during the previous trial before Judge Kinne.

It appears that, after the commencement of the divorce action in February, 1946, the parties attempted to make a division of their property through a property settlement agreement, but up until the time of the trial of the cause on July 8, 1946, they had not arrived at any satisfactory conclusion. When the case was called for trial before Judge Kinne, the attorneys asked for, and were granted, a recess during which the parties might further consider a settlement of their property rights. Counsel and their clients thereupon went into the jury room near-by and held a conference among themselves lasting twenty or thirty minutes, after

which they returned to the courtroom and entered upon the trial, during which the foregoing stipulation was dictated into the record. Appellant and respondent each testified at length as to what occurred at the time of and during that conference. Their testimony was in some respects conflicting and raised an issue of fact.

Respondent testified that the purpose of holding the conference was to make a complete property settlement; that all matters were fully discussed and a final settlement made; that, during the conference, appellant and her attorney, Mr. Mifflin, consulted together alone for a part of the time; and that, at the conclusion of the entire conference, and just before returning to the courtroom, appellant and respondent were each asked by counsel whether they agreed to the settlement, and both responded in the affirmative.

Judge Batchelor evidently believed respondent's testimony, rather than that of appellant, on the question of appellant's alleged misunderstanding of the stipulation. In his oral decision, he stated that appellant was a good businesswoman, that she had a reputable lawyer, and that it was inconceivable that her attorney would have represented to the court that a settlement had been reached if his client had not understood or was not satisfied with it. The judge then summarized the situation as follows:

"Here is about what happened—and, I will say it kindly: The woman agreed and understood. After she got out she began to figure she had made a bad bargain. That is my opinion on exactly what happened. I am saying it kindly, but firmly."

This disposes of appellant's first contention set forth above.

She next contends that, for several reasons, the stipulation was not a complete, adequate, valid, and effective property division between the parties. The first reason assigned by her on this contention is that the stipulation did not fully describe all the community property, but omitted much of it.

The stipulation listed the property as consisting of the real estate and, located upon it, an auto cabin camp and gas station, together with inventory and equipment necessary to

conduct the business, also a machine shop and a Dodge automobile. These concededly constituted the principal items of property. Further along in the stipulation were mentioned specific items of personal property which appellant either had received or was to receive. It is possible that some items of property were not specifically mentioned. However, by the stipulation both parties agreed that the community property consisted of the items therein listed and described, and further agreed upon what appellant was to receive thereunder. Since the trial court found that appellant understood and agreed to the stipulation, she is now in no position to repudiate it on the ground that had. the stipulation mentioned other items of property she might have received a greater award.

The second reason advanced by appellant on this particular assignment is that, since the stipulation was not in writing nor signed by the parties and did not contain a legal description of the real property, it was void under the statute of frauds.

In our opinion, the statute of frauds has no application to the present situation. The agreement having been stipulated in open court in a cause wherein the subject of the agreement was one of the very matters which the parties submitted to the court for determination, no writing or signatures were required. Such stipulated agreements are clearly beyond the purview or reason of the statute requiring contracts relating to real property to be in writing and signed by the parties. The very purpose of the stipulation was to obviate the necessity of introducing any evidence on the subject and to invoke the court's approval of an agreement which the parties solemnly represented as having been made by and between themselves.

In an analogous situation, arising in the case of *Savage v. Blanchard,* 148 Mass. 348, 19 N. E. 396, the supreme judicial court of Massachusetts said:

"The court was asked to rule, first, that the agreement was invalid because not in writing, under Pub. Sts. c. 167, § 63. It is a sufficient answer to this proposition, that the statute

plainly is not intended to apply to an agreement like the present, made in open court and acted on by the court."

See, also, *Lewis v. Wilson*, 151 U. S. 551, 38 L. Ed. 267, 14 S. Ct. 419; *Dubuc v. Lazell, Dalley & Co.*, 182 N. Y. 482, 75 N. E. 401; *Dittmeir v. Laughlin*, 253 S. W. (Mo. App.) 777; *McCoy v. McCoy*, 74 W. Va. 64, 81 S. E. 562, Ann. Cas. 1916C, 367; Browne, Statute of Frauds (5th ed.) 164, § 135; 60 C. J. 43, Stipulations, § 8.

For reasons similar to those expressed above, such description of the property as would satisfy the requirements of the statute of frauds was not necessary under the circumstances present in this case. The statute clearly was designed to prevent the introduction of parol evidence in proof of contracts or conveyances affecting real estate. In the trial of this cause, however, there was no attempt on the part of either party to prove, as against the other or over the other's objection, an agreement by parol evidence. There was, in fact, no issue between the parties on that subject; they had agreed between themselves on the terms of settlement with reference to all of their property, had so advised the court, and had specifically requested the court to ratify and confirm that agreement, which the court did, thus obviating the necessity of producing further evidence with reference to the exact legal description of the property. Under that situation, neither party can now invoke, as against the other, the parol evidence rule prohibiting proof of the proper legal description of the property, nor invoke the statute to prohibit such evidence.

■ The next reason assigned by appellant is that the stipulation did not specifically recite who, as between the parties herein, was to receive the real estate in the event respondent exercised the option to pay five thousand dollars cash and give a note in a like amount. In our opinion, the court correctly interpreted the stipulation to mean that, under that option, respondent was to have the property. No other meaning could have been intended by either party, for certainly appellant could not expect to receive both the land and the ten thousand dollars, leaving nothing to the respondent.

■ Next it is asserted by appellant that the property division is vague and ambiguous, in that it does not show clearly whether appellant was to receive one hundred dollars a month up to the time when she was to be paid the first five thousand dollars or up to the time when the note for five thousand dollars payable in two years was also paid. This provision of the stipulation was undoubtedly intended to provide appellant with monthly support until she had received the substantial payment of five thousand dollars, and the court so held. We think this was the clear intent of the stipulation. The evidence shows that the five thousand dollars was paid in escrow, and that appellant refused to accept it.

■ Appellant's principal assignment of error is that as to her the property division was not just and equitable. Her contention is that the property is worth between thirty-five thousand and forty thousand dollars, of which she should receive one half in value, as that was the intention expressed in the agreement and entertained by the court.

In the hearing before Judge Batchelor, the evidence as to values was in conflict. Respondent's evidence was that the real property was worth approximately $32,500; that the unpaid purchase price was $11,325; that the real-estate commission for selling the property would amount to $2,000; and that there would be certain expenses for title insurance and other incidentals. Taking all these matters into consideration, the net proceeds to be realized from the property would amount to approximately $20,000. The court found that it was on this basis that the parties agreed that appellant should receive $10,000. We are in accord with the court's conclusion in that respect. In addition to that, the stipulation provided that appellant should receive the Dodge automobile and certain other items of personal property. We believe that the stipulation, as the court interpreted it, made a just and equitable division and distribution of the property.

■ Appellant next contends that, in the proceeding before Judge Batchelor, she should have been awarded her costs and an attorney's fee in the original divorce action, an attorney's fee in the hearing for modification, and monthly

support until determination of the entire cause on appeal. These were, at best, matters resting in the sound discretion of the court. *Van Gelder v. Van Gelder,* 61 Wash. 146, 112 Pac. 86; *Smiley v. Smiley,* 136 Wash. 241, 239 Pac. 551; *Mason v. Mason,* 163 Wash. 539, 1 P. (2d) 885; *Lehrman v. Lehrman,* 183 Wash. 649, 49 P. (2d) 41. We perceive no abuse of discretion in the ruling made by the court.

Finally, appellant assigns error upon the admission of certain evidence offered by the respondent and the refusal to admit certain other evidence offered by appellant. We have examined the record bearing upon these assignments and are of the opinion that the court was correct in its rulings. The points raised are not of sufficient importance to merit further discussion of them.

We find no error in the record. The interlocutory order of divorce and the order denying appellant's motion to modify that order and vacate the property settlement agreement referred to therein, are both affirmed.

MALLERY, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.