# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RANJIV HAYRE and SUKHJIWAN HAYRE,<br><br>Respondents,<br><br>v.<br><br>DEAN STREET and JANIS L. STREET, husband and wife, individually and their marital community,<br><br>Appellants,<br><br>EVERGREEN MONEYSOURCE MORTGAGE CORPORATION, a Washington corporation; MORTGAGE ELECTRONIC REGISTRATION, INC. ("MERS"), a Delaware corporation; and SAXON MORTGAGE SERVICES, INC., a Texas corporation,<br><br>Defendants. | No. 68494-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: June 17, 2013 |

APPELWICK, J. — The Hayres and Street are tenants in common of a 26 acre investment property that became the subject of a partition action. The trial court granted the Hayres motion to enforce a settlement agreement pursuant to CR 2A. However, the Hayres have not established that the form of deed to be used to transfer the property is not a material term missing from the agreement. We reverse, vacate the award of attorney fees, and remand.

FACTS

In April 2006, Ranjiv and Sukhjiwan (Jiwan) Hayre purchased a 26 acre property in Enumclaw for $865,000 at a foreclosure auction. The Hayres asked their friend, Dean Street, to invest in the property with them. Street agreed to pay the Hayres $288,333 for a one-third interest in the property. Thus, Ranjiv, Jiwan, and Street each owned a one-third interest as tenants in common. They planned to fix the property and sell it, and they agreed that none of them would transfer their interest to a third party. They agreed to equally share the cost of maintenance and any profits or losses.

In May 2007, the parties arranged to borrow $1.5 million against the property and disbursed $500,000 to each co-tenant. Street is the only person who signed the promissory note, but the Hayres each signed the deed of trust encumbering the property.

In September 2007, the parties agreed to list the property for $2.795 million. Street, a licensed real estate agent, has been trying to sell the property ever since.

Throughout this time, Street has been responsible for managing the property. He takes care of mortgage payments, property taxes, and insurance. He also pays for maintenance of the property. He kept a detailed ledger of his expenditures and periodically received reimbursement from the Hayres for their two-thirds share. The Hayres stopped reimbursing Street in September 2009. They wished to deed their interest in the property to Street and relieve themselves of their obligation to pay for two-thirds of the property's expenses. Street declined.

2

In March 2011, the Hayres filed a complaint enumerating three causes of action. First, they asked the court to appoint a referee to sell the property and distribute the proceeds. Second, they sought a declaratory judgment that they had no obligations under the note. Third, they alleged that Street used the property to operate an equestrian business, and sought rent for his use of the property at the fair market value to be determined at trial. Although he agreed that the property should be sold, Street counterclaimed to recover prior and future expenses, and he sought damages for the Hayres' refusal to cooperate with Street's attempt to arrange a short sale of the property. In May 2011, the trial court appointed Rebecca Wiess to serve as a referee at an hourly rate of $250.

On February 6, 2012, Street's attorney, Michael Hunsinger, called the Hayres' attorney, Lawrence Glosser. He offered to settle for $50,000 from the Hayres, a transfer of the Hayres' interest in the property, and a mutual release of all claims. Glosser verbally counter-offered for $40,000. Later that afternoon, Hunsinger responded to the counter-offer in an e-mail:

> Dean rejects [the Hayres'] counter-offer of $40,000. He renews his offer to accept payment of $50,000 and transfer of title to the property to him and his wife, with mutual releases. If that is rejected, Dean would like to meet briefly with Ranjiv Hayre. You may also attend, as long as you do not participate.
>
> Please respond no later than noon tomorrow.

Two minutes later, Glosser responded:

> I am authorized to accept the offer of $50k and conveyance of the property to Dean Street in exchange for a full and complete release of all claims and causes of action related to the acquisition and ownership of the property whether past, present, future, known or unknown.

3

If that works, I will strike my motion before Judge Heavey and we can work on an agreeable settlement and release.

Hunsinger replied:

Agreed. Please prepare the paper work.

The next day, February 7, the Hayres sent a draft settlement agreement:

Here is a draft of the Settlement Agreement and Release and the QCD [quit claim deed] and Excise Tax Affidavit. I think the exemption on the Excise Tax Affidavit would apply to this case, but if for some reason it doesn't work we can probably have the transfer ordered by the Court.

Get back to me with any questions comments, or suggested changes.

The same day that the Hayres sent a draft agreement, Street informed Hunsinger that he would only accept a settlement for $50,000 on the condition that the company servicing the $1.5 million note, Saxon Mortgage, agreed to a short sale and waived any deficiency on the loan. Hunsinger wrote to Glosser and Wiess on February 8 to inform them of the bad news:

It was Dean Street's understanding that the agreement to accept $50,000 and a deed from the Hayres in return for their full release was conditional upon Saxon's agreement to a short sale that resulted in no additional obligations from the Streets to Saxon.

Of course, Saxon has not yet made any such agreement. Moreover, I am sure that [Glosser] and his clients' willingness to enter into such a settlement agreement did not contemplate such a condition. I apologize for the lack of clarity.

Accordingly, I do not yet have authority to enter into such an agreement with the Hayres on behalf of the Streets until we know Saxon's position regarding a short sale, and on behalf of Saxon, David [Elkanich] understandably first wants to know what pending agreement Saxon is being asked to approve. Dean is in the process of providing David with that information.

4

The Hayres filed a motion to enforce the settlement agreement. They argued that the e-mail exchange was a binding settlement pursuant to CR 2A. The trial court granted the motion. It found that the settlement was not made or accepted as a conditional settlement and that Hunsinger was acting as an attorney and agent for Street. It found that the material terms of the settlement were (a) payment of $50,000 to Street, (b) transfer of the Hayres' interest in the property to Street, and (c) the mutual release of all claims. The order gave the parties eight[1] days to consummate the agreement. If they could not do so, then the Hayres were ordered to deposit the $50,000 into the registry of the court and it would fall to Wiess to convey the property from the Hayres to Street. The trial court also ordered Street to pay the Hayres $500 for the cost of bringing the motion to enforce settlement.

## DISCUSSION

Settlement agreements are governed by general principles of contract law. Evans & Son, Inc. v. City of Yakima, 136 Wn. App. 471, 477, 149 P.3d 691 (2006). A valid agreement requires a meeting of the minds on essential terms. Id. To determine if informal writings are sufficient to establish a binding settlement agreement, we must conclude that (1) the parties agreed to the subject matter, (2) all of the provisions of the agreement were set out in the writings, and (3) the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract. Id. at 475-76.

---

[1] The parties had 12 days from the date the order was signed, but 8 days from the date it was filed.

The purpose of CR 2A is to give certainty and finality to settlements. Condon v. Condon, ___ Wn.2d ___, 295 P.3d 86, 89 (2013). The party moving to enforce a settlement agreement carries the burden of proving that there is no genuine dispute over the existence and material terms of the agreement. Brinkerhoff v. Campbell, 99 Wn. App. 692, 696-97, 994 P.2d 911 (2000). We consider the evidence in the light most favorable to the nonmoving party and determine whether reasonable minds could reach but one conclusion. Id. at 697. Where a trial court relies solely on affidavits or declarations, we review its order enforcing settlement de novo. Id. at 696.

I.     Binding Agreement

Parties may enter a contractual relationship with informal writings even when they contemplate that a subsequent formal contract will be executed. Plumbing Shop, Inc. v. Pitts, 67 Wn.2d 514, 519, 408 P.2d 382 (1965). The mere anticipation of a formal memorialization does not alone suggest that the parties intended to be bound only by such a document. Morris v. Maks, 69 Wn. App. 865, 871-72, 850 P.2d 1357 (1993). Street argues that the parties did not intend a binding agreement prior to the execution of a formal contract. He claims that, to the contrary, they merely made an unenforceable agreement to agree.

Street relies primarily on Evans. In that case, the City of Yakima contracted with Evans & Son, Inc. to perform deep tilling work in a city park. 136 Wn. App. at 473. The city learned that deep tilling was not necessary in a portion of the park and directed Evans to stop working until it heard otherwise. Id. The city delayed providing further guidance, and Evans alleged it lost over $150,000 as a result of the delay. Id. In a letter, the city offered to settle for $40,000. Id. at 473-74. The letter cautioned that

"'[s]ettlement is contingent on execution of a Settlement Agreement that I will draft.'" Id. at 474 (alteration in original). Evans's attorney accepted the amount of $40,000 to "resolve all issues pertaining to the . . . construction contract." Id. The city sent a draft settlement agreement. Id. After Evans's attorney revised the agreement, the city reminded Evans that "'[s]ettlement is contingent on execution of a Settlement Agreement that I will draft.'" Id. (alteration in original). Evans took the position that the release in the draft agreement was unacceptably broad, because it released any and all claims against the city, instead of just claims arising from the specific construction contract at issue. Id. Evans refused to release all potential, unrelated claims. Id. at 474-75. It sued the city for delay damages. Id. at 475. The Court of Appeals concluded that the letters between the parties showed only a desire to reach a settlement and the monetary amount of settlement, and they did not suggest that they themselves were the binding agreement. Id. at 477-78. Indeed, the court emphasized the fact that the city repeatedly and explicitly asserted that settlement was subject to the execution of a settlement agreement drafted by the city. Id. at 474, 477.

In contrast, Hunsinger and Glosser reached an unequivocal agreement. Hunsinger made an initial written offer to "accept payment of $50,000 and transfer of title to the property to him and his wife, with mutual releases." Glosser reiterated the terms of the agreement and told Hunsinger, "If that works, I will strike my motion before Judge Heavey and we can work on an agreeable settlement and release." Hunsinger unequivocally replied, "Agreed. Please prepare the paper work." The e-mails did not contain any language conditioning settlement on the execution of a more formal agreement. They merely contemplated the execution of a conforming settlement and

7

release. The contemplation of a future, formal memorialization did not diminish the binding nature of their agreement.

The unequivocal nature of the agreement is further evidenced by Street's acceptance of the Hayres' offer to strike a pending motion to compel Street's wife to appear for a deposition. The Hayres had been vigorously pursuing the deposition, and Street had been vigorously opposing it. Street has not offered any explanation of why he would have agreed to strike the motion if settlement had not been achieved.

Moreover, statements by Street and Hunsinger subsequently indicated their belief that an agreement had been reached. Two days after the parties agreed to terms, and a day after the Hayres sent a draft agreement, Hunsinger wrote a letter explaining that Street believed "the agreement to accept $50,000 and a deed from the Hayres in return for their full release was conditional upon Saxon's agreement to a short sale." He went on to explain that he knew the Hayres' "willingness to enter into such a settlement agreement did not contemplate such a condition." In a declaration in response to the Hayres' motion to enforce settlement, Street stated, "It was my belief that the agreement . . . was contingent upon the lender of the $1.5 million loan . . . agreeing that my wife Jan and I would not be liable for any deficiency after I finally sell the property. Without that condition I would not have authorized the settlement agreement." These statements by Hunsinger and Street clearly indicate recognition that there was an agreement. The issue they identify is that Hunsinger had failed to communicate one of his client's conditions in the offer. But, Street does not contest the trial court's determination that Hunsinger was acting as Street's agent and had authority

8

to bind him based on that relationship. Both the offer and acceptance were clearly communicated. An agreement was formed.

## II.  Material Terms

Despite their intent evidenced in the e-mail language to enter a binding agreement, Street argues that he and the Hayres nevertheless failed to reach agreement on four material terms. Specifically, he alleges that they did not discuss the scope of release, which party or parties would pay referee's fees, which party or parties would pay excise taxes or what the excise tax affidavit would say, or the form of deed that would be used to effectuate transfer. Notably, case law does not provide a clear definition of "material."[2] Rather, what constitutes a material term is dependent upon the particular facts of a given case. Sea-Van Invs. Assocs. v. Hamilton, 125 Wn.2d 120, 126, 881 P.2d 1035 (1994). Black's Law Dictionary defines "material" as, "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential." BLACK'S LAW DICTIONARY 1066 (9th ed. 2009).

### A.  Scope of Release

Street argues that he and the Hayres did not agree on the scope of the mutual release of claims, because they did not discuss "whether the Hayres could be liable for a deficiency if the lender did not agree to a short sale." But, the parties clearly did agree on the scope of release. Hunsinger wrote to Glosser that the settlement would involve "mutual releases." Glosser responded that it would include "a full and complete

---

[2] Although the parties dedicate significant briefing to Morris and Evans, neither of those cases contains anything more than conclusory statements that a given term is, or is not, material. Neither attempts to comprehensively define the term "material," and we decline to do so here.

released of all claims and causes of action." Hunsinger replied, "Agreed." That language encompassed any cause of action related to liability on the $1.5 million loan, which was central to the very claim being settled. Street's desire to continue to hold the Hayres liable on the note, if Saxon did not agree to waive any deficiency resulting from the short sale, was merely an unexpressed condition on settlement that we will not consider. See, e.g., Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Moreover, Street points to release language in the Hayres' draft settlement agreement to support his assertion that the trial court ordered a broader release than the parties contemplated. But, the trial court did not enforce the Hayres' draft settlement agreement. It enforced the settlement as expressed in the attorneys' e-mails and ordered "mutual release of any claims."

B.    Referee's Fees

Street asserts that the parties never discussed who would pay referee's fees. But, that issue is controlled by statute:

> The cost of partition, including fees of referees and other disbursements including reasonable attorney fees . . . shall be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interests therein.

RCW 7.52.480. The trial court determined the fees to be paid when it appointed Wiess and directed that she would be paid $250 per hour. Under RCW 7.52.480, those fees were to be paid in proportion to the parties' interest in the property. The parties could have negotiated for a specific division of the fees, but since the statute provides that the fees are divided in proportion to the parties' interest in the property, the term was not material.

C.    Excise Tax

Street likewise argues that he and the Hayres did not discuss what the excise tax affidavit would say or who would pay it.  Again, however, excise taxes are an issue controlled by statute.  WAC 458-61A-208 provides a detailed description of whether excise taxes are owed when property is transferred pursuant to an order of sale by a court.  In fact, it specifically gives two examples that explain when excise taxes are owed when there is a transfer of property from one tenant in common to another.  WAC 458-61A-208(2).  And, RCW 82.45.080 provides that the excise tax is the seller's obligation.[3]  The dispute concerning the excise tax affidavit arose after the agreement was reached, when Street balked at signing the tax affidavit.  Any such disagreement, however, does not necessarily alter the materiality of determining which party or parties would pay any excise tax owed.  The agreement is not invalid by virtue of missing a term that is controlled and supplied by statute.

D.    Form of Deed

Street argues that the parties did not agree on the form of deed that would be used to transfer the property, which range in quality from a statutory warranty deed to a quit claim deed.  In a statutory warranty deed, the grantor warrants:

> (1) That at the time of the making and delivery of such deed he or she was lawfully seized of indefeasible estate in fee simple, in and to the premises therein described, and had good right and full power to convey the same; (2) that the same were then free from all encumbrances; and (3) that he or she warrants to the grantee, his or her heirs and assigns, the quiet and

---

[3] The Hayres asserted at oral argument that the tax issue actually relates to property tax that may be owed by the seller as a result of removing the property from its agricultural classification.  Nothing in the record demonstrates the property was necessarily being changed from its agricultural classification.  And, that issue is not contained within Street's briefing on appeal.

peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same.

RCW 64.04.030. At the other end of the spectrum, in a quit claim deed the grantor conveys only the then existing legal and equitable rights of the grantor, with no guarantee of what those rights are. Roeder Co. v. K&E Moving & Storage Co., 102 Wn. App. 49, 56-57, 4 P.3d 839 (2000).

In Hubbell v Ward, the Supreme Court listed 13 terms material to a proposed real estate contract. 40 Wn.2d 779, 782-83, 246 P.2d 468 (1952). Those terms encompass the form of deed:

> "(a) time and manner for transferring title; (b) procedure for declaring forfeiture; (c) allocation of risk with respect to damage or destruction; (d) insurance provisions; (e) responsibility for: (i) taxes, (ii) repairs, and (iii) water and utilities; (f) restrictions, if any, on: (i) capital improvements, (ii) liens, (iii) removal or replacement of personal property, and (iv) types of use; (g) time and place for monthly payments; and (h) indemnification provisions."

Sea-Van, 125 Wn.2d at 128 (quoting Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993) (citing Hubbell, 40 Wn.2d at 782-83)). The Sea-Van court concluded that those material terms are not limited to the context of real estate contracts. Id. at 128-29. It explained that it had never made such a distinction, and that the terms are equally applicable in the deed of trust context. Id.

The Hayres argue that this case is in neither the real estate contract nor deed of trust context, and that the Hubbell terms do not apply in the CR 2A context. But, the Sea-Van court held that the relevance of the Hubbell terms is not limited to cases involving real estate contracts. Id. at 128-29. It suggested that the terms have broad relevance, not that they apply only in the real estate contract or deed of trust context. Id. And, the same rationale underlying the Hubbell line of cases applies here.

Agreements concerning the transfer of real property "must be definite enough on material terms to allow enforcement without the court supplying those terms." Setterlund v. Firestone, 104 Wn.2d 24, 25, 700 P.2d 745 (1985). The trial court is unable to order transfer from the Hayres to Street without specifying the form of deed. Further, the Hayres rely on readily distinguishable cases to support their assertion that the Hubbell terms do not apply in the CR 2A context. In those cases, the court held that oral agreements stipulated to in open court are not invalid under the statute of frauds. See Snyder v. Tompkins, 20 Wn. App. 167, 172, 579 P.2d 994 (1978); Deer v. Deer, 29 Wn.2d 202, 212, 186 P.2d 619 (1947). There was no argument in either Snyder or Deer that the stipulations were insufficiently definite.

However, we also reject the implication from Street's argument that the Hubbell terms are always material. Whether a specific term is material is dependent upon the facts of a given case. Sea-Van, 125 Wn.2d at 126. This case illustrates the truth of that proposition. Many of the Hubbell terms, such as restrictions on capital improvements or the time and place for monthly payments, are not implicated at all. The discussion above concerning referee's fees and excise tax shows that even those terms that are arguably implicated are not necessarily material. The question remaining is whether the form of deed is material in this case.

Below, Street argued in his response to the Hayres' motion to enforce settlement that the form of deed was a missing material term. The Hayres did not address that argument at all in their reply. On appeal, their argument that the form of deed is not material is limited to a bare assertion, supported only by inapposite cases, that Hubbell and its progeny do not apply here. They offer no argument that the form of deed is not

13

material under the facts of this case. Yet, they bear the burden to prove that there is no genuine dispute over the existence and material terms of the agreement. Brinkerhoff, 99 Wn. App. at 696-97.

At least three factors suggest the form of deed was not material. First, the Hayres and Street already share the same quality of title as tenants in common. Second, all parties knew the property was encumbered by a $1.5 million loan and the agreement did not contemplate that encumbrance being discharged. Thus, a statutory warranty deed without exceptions was not available. Third, the parties not only knew the property was encumbered, they knew it was encumbered beyond its market value. They knew Street had signed the note and the Hayres had not. They knew the release terms included claims related to that note. Thus, Street was taking the property subject to that liability. However, the record contains no evidence of whether additional encumbrances existed on the property that should have been addressed in the deed. It does not demonstrate that no provisions beyond a quit claim were material to the transaction.

Viewing the evidence in the light most favorable to Street, these factors alone are not sufficient to establish that reasonable minds could reach but one conclusion, that the form of deed was not material or that a quit claim deed was necessarily sufficient. A genuine dispute concerning whether the parties agreed on all material terms remains. The trial court erred by granting the Hayres' motion to enforce settlement.[4] This is not to say that the Hayres could not renew their motion on appropriate evidence.

_____

[4] Street also claims that the trial court erred by granting the motion to enforce on six days notice and denying his motion to continue. Because we reverse, we do not reach that issue.

III.   Attorney Fees

The Hayres requested attorney fees in their motion to enforce settlement, but did not cite any authority justifying the fees:

> The Court has discretion to impose an award of attorneys' fees in connection with this matter.  Here, the Plaintiffs incurred attorneys' fees when Michael Hunsinger directed Mr. Glosser to draft the settlement documents, which were promptly done.  In addition, the Plaintiffs have incurred costs in connection with bringing this motion to enforce a legally binding settlement agreement.

The trial court awarded the Hayres $500, stating only, "judgment is entered against Defendant Dean Street in favor of Plaintiffs in the amount of $500.00 for the attorneys fees incurred as a result [of] their having to bring this Motion."  Attorney fees may be awarded only when authorized by a private agreement, a statute, or a recognized ground of equity.  In re Marriage of MacGibbon, 139 Wn. App. 496, 504, 161 P.3d 441 (2007).  On appeal, the Hayres hypothesize that the trial court could have awarded the fees pursuant to its equitable powers or as sanctions for disavowing the settlement agreement and forcing the Hayres to file a motion to enforce settlement.  Because we reverse, we necessarily vacate the award of attorney fees.  Moreover, even if there was an equitable basis to impose fees, neither the trial court nor the Hayres identified that equitable basis.  Further, the fees cannot be upheld as an award of sanctions, because the Hayres did not request sanctions and the trial court did not enumerate any sanctionable conduct.  See, e.g., N. Coast Elec. Co. v. Selig, 136 Wn. App. 636, 649, 151 P.3d 211 (2007) (party should make motion for sanctions as soon as it becomes aware they are warranted and the trial court must make explicit findings as to which pleadings violated CR 11 and how such pleadings constituted a violation); RCW

4.84.185 ("This determination shall be made upon motion by the prevailing party" and "upon written findings by the judge.").

We reverse and remand.

_Appelwick, J._

WE CONCUR:

_Spearman, A.C.J._          _Becker, J._