[No. 1322-2.    Division Two.    July 21, 1975.]

ALLEN L. SWANSON et al, *Appellants*, v. HARVEY A. HOLMQUIST et al, *Respondents*.

*James M. Healy, Jr.* (of *Healy & Godderis*), for appellants.

*Alan Rasmussen*, for respondents.

ARMSTRONG, C.J.—This is an appeal from a dismissal in an action for damages resulting from breach of contract. The issue presented by the facts is whether there was the requisite mutual assent to an essential term of the agreement. We hold that mutual assent was lacking. Therefore no enforceable contract was created and the action was properly dismissed.

The subject of this dispute is an earnest money agreement dated October 28, 1972, for the purchase of a house and lot by appellants Allen and Nancy Swanson for $20,050 from respondents Harvey and Jeanette Holmquist, who were to construct the house. The agreement was on a standard form, with many of the provisions being printed and others written in the blanks. The house was to be completed by March 1, 1973, and possession was to take place upon closing. The agreement also provided:

Purchasers agree to pay the entire purchase price by the proceeds of a VA 100% mortgage loan for which they agree to make immediate application and pay $300.00 of the closing cost thereof.

The Holmquists and Swansons entered into this agreement through a realtor. Never having met either of the Holmquists, the Swansons signed the agreement in the space provided below item 13, the next to last paragraph of the form. Also printed on the form was item 14, below which the Holmquists later signed in the space provided, apparently not in the presence of the Swansons. Item 14 contained a broker's commission agreement and a statement that the builders "agree to absorb a mortgage discount to finance this transaction, in an amount not to exceed 2% of the loan amount." The percentage figure was blank when the Swansons signed below item 13, and "2%" was filled in by the Holmquists upon signing. The record does not indicate that the Swansons signed in the space provided below item 14 for acknowledgment of receipt of a copy of the agreement. The Swansons did not see the agreement after they signed it until April 8, 1973.

Completion of construction was delayed by adverse weather conditions until approximately May 18, 1973. On April 8, 1973, Holmquist and the Swansons met for the first time, in the presence of the realtor who had arranged the deal. At this meeting, Holmquist stated that due to increased building costs, he could not sell the house for less than $21,500. Swanson expressed his willingness to be fair if Holmquist could document the increases. Also discussed was the mortgage discount, but Swanson, as he testified at trial, paid little attention to the discussion as he understood that it was a cost to be borne by the builder and would not affect him.

There is some dispute as to what occurred subsequently. Holmquist testified that it was his understanding that the Swansons were willing to purchase for $21,000. Swanson testified that he did not agree to an increase in the purchase price. There was also a dispute whether the Swan-

sons had been given the opportunity to select colors for the house, as provided in the contract. The Veterans Administration appraised the house at $23,000, but Holmquist reaffirmed his willingness to sell for $21,500.

In May 1973, the Swansons withdrew their loan request and brought suit, alleging damages in the amount of the difference between the original purchase price of $20,050 and $26,000, a figure Swanson asserted represented the fair market value. He reached his conclusion by checking into the prices of comparable houses; he obtained no appraisal himself. Damages were also sought for confusion and embarrassment and costs. The Holmquists continued to offer the house to the Swansons through August 1973, when they took it off the market. It seems that between May and August of 1973 the Swansons resubmitted their loan request but once again withdrew it.

The Holmquists counterclaimed for interest paid on the loan to finance construction. After trial without jury, the trial court entered findings of fact and conclusions of law, in which it found that item 14 was an integral part of the contract, that no breach of the contract had occurred, and that the Swansons had failed to prove any substantial damages. In its oral opinion, the court ruled that the Swansons had not tendered performance under the contract, that is, the purchase price of $20,050 plus the excess of the discount rate over 2 percent, a sum of $601.50. The discount rate at the time was 5 percent. The court also denied the Holmquists' counterclaim, a denial from which they do not appeal.

The Swansons contend (1) that they were not required to tender performance prior to bringing an action for damages and (2) that the court erred in concluding that item 14 was an integral part of the agreement. We do not reach these issues because we are of the opinion that it cannot be said that there was a contract created here; the mutual assent necessary to an enforceable contract was not present. A judgment may be affirmed on any ground supported by the pleadings and proof. *Knisely v. Burke Concrete Accessories, Inc.*, 2 Wn. App. 533, 468 P.2d 717 (1970).

■ Mutual assent is the modern expression for the concept of "meeting of the minds." *See Wetherbee v. Gary*, 62 Wn.2d 123, 381 P.2d 237 (1963). In the absence of mutual assent there can be no contract. *Richards v. Kuppinger*, 46 Wn.2d 62, 278 P.2d 395 (1955); 1 A. Corbin, *Contracts* § 107, at 479 (1963). Mutual assent cannot be based upon subjective intent, but rather must be founded upon "an objective manifestation of mutual intent on the essential terms of the promise." *Peoples Mortgage Co. v. Vista View Builders*, 6 Wn. App. 744, 747-48, 496 P.2d 354 (1972).

A recent case decided by Division One of the Court of Appeals presented a factual situation similar to the one in the case at bar. *Shuck v. Everett Sports Cars, Inc.*, 12 Wn. App. 28, 527 P.2d 1321 (1974). There the plaintiff had entered into a written contract to purchase a car, part of the consideration for which was his old car in trade, which was subject to a security interest of a bank. The contract stated that the balance due the secured creditor was $1,500, when in fact it was $1,950.43. Neither party had undertaken to ascertain the correct amount owing. The plaintiff returned the car he had purchased and attempted to rescind the contract. The dealer refused to return the car which the plaintiff had traded in, and plaintiff sued for conversion of this automobile. The dealer appealed from an adverse judgment and the Court of Appeals affirmed. We quote some of the applicable language of its opinion:

> The parties entered into a purported agreement based upon a nebulous understanding on the part of the plaintiff that either the balance due on the Jaguar was approximately $1,500 or, if the balance was a greater amount, that the defendant would accept the arrangement in any event. The defendant, on the other hand, did not so understand the arrangement and apparently intended there to be an agreement only if the balance was approximately the $1,500 figure. Neither party ascertained the true amount due on the Jaguar, but both signed the document which set forth the balance due at $1,500. Under these circumstances, there was not a meeting of the minds of the parties on a material part of the contract—the actual purchase price. Each party had in

mind an unexpressed intent which differed from that objectively manifested to the other. The document signed by the parties did not reflect a common understanding of the essential terms of a contract and, therefore, no con-. tract existed between them.

*Shuck v. Everett Sports Cars, Inc., supra* at 31.

In the case at bar, there was no mutual assent as to one important term of the contract—which party was responsible for assuming the excess of the mortgage discount over 2 percent, or stating it another way, what would occur if the discount rate exceeded 2 percent. As pointed out in *Peoples Mortgage Co. v. Vista View Builders, supra,* an unexpressed subjective intent does not constitute mutual assent. The facts here indicate that it was Swanson's understanding that the mortgage discount was a cost to the builder only and would not affect his consideration for the property. This understanding was never verbalized. Holmquist, on the other hand, testified that his quoted sale price was based upon a maximum mortgage discount rate of 2 percent, and that he would not have absorbed more. Also important is that the Swansons' signatures were missing from the space provided below item 14 for acknowledgment of receipt of the agreement after it was signed and the 2 percent figure was written in by the Holmquists. As in *Shuck,* the contracting parties here had different understandings of a material portion of the agreement. Since the document did not reflect a common understanding of an essential term of the agreement, that is, did not reflect a mutual intent or mutual assent to the term, there was no contract.

Judgment affirmed.

PEARSON and PETRIE, JJ., concur.