[No. 24167-6-II.   Division Two.   October 29, 1999.]

JOHN HADALLER, *Appellant*, v. THE PORT OF CHEHALIS, *Respondent*.

*Jon Emmett Cushman* of *Cushman Law Offices, P.S.*, for appellant.

*Bruce Paul Babbitt* of *Jameson Babbitt Stites & Lombard, P.L.L.C.*, for respondent.

ARMSTRONG, A.C.J. — John Hadaller d/b/a J. Hadaller Construction Company bid on a construction project for the Port of Chehalis. When the Port awarded the contract to another bidder, Hadaller sued, alleging that when the

Port voted to award him the bid, an oral contract was formed. The trial judge granted the Port's motion for summary judgment. We affirm.

## FACTS

At the invitation of the Port of Chehalis, Hadaller submitted a bid for construction of the McBride Court Building. On March 30, 1998, Heidi Pehl, the Port's Executive Director, notified Hadaller and two other contractors in writing that they were the "three apparent low bidders for this project." In her letter, Pehl said, "In accordance with the project specifications the Port of Chehalis must now determine the lowest qualified bidder." She then asked each contractor to submit additional information so that the Port could determine "the lowest qualified bidder." The requested information included: (1) AIA Document A305, Contractor's Qualification Statement and Performance Record; (2) a list of work that would be performed by the general contractor; (3) a list of products, manufacturers, and supplies; (4) a list of subcontractors; (5) schedule of values, including description of work and cost of each division; and (6) letters of recommendation. Hadaller completed these documents and submitted them to the Port.

On April 8, 1998, the project architect, John Scherer, wrote Pehl that Hadaller "is the lowest qualified bidder." A "pre-contract" meeting was scheduled for April 10, 1998. On April 9, 1998, Pehl told the Port commission that "the three lowest bids have been reviewed by the architect, attorney and the USDA representative and they have been deemed responsive." In addition, she said that the contract qualifications of the three low bidders had been reviewed. According to the minutes, she said, "[T]he apparent low bidder is J. Hadaller Construction and the contract will be ready to award after the lease for the building has been signed." During the meeting, Pehl was notified that the lease had been signed. The commissioners then approved the award of the bid to Hadaller. The USDA, who approves

the Port's plans and specifications for the project, said in a letter, "We have also reviewed and hereby concur in the contract award to J. Hadaller Construction in the base bid amount of $379,490."

The day after the commission's vote, Hadaller and his subcontractors met with Scherer and Pehl. At this meeting, Pehl told Hadaller that he had been awarded the bid. Immediately following the meeting, Scherer requested three items of additional information concerning the metal building systems, including a 10-year list of satisfactory installations from his subcontractor, a certification for the metal building manufacturer, and a 20-year manufacturer's warranty. On the same day, the Port also notified one of the contractors who submitted a bid that "[w]e have awarded the bid to J Hadaller Construction, Inc., . . . and are returning herewith your bid bond."

On April 14, 1998, Scherer faxed a follow-up to his letter and again expressed his concerns about the metal building systems. He told Hadaller to submit the same three items and indicated that he had spoken to Hadaller on the phone about his concerns the previous day. Scherer wrote, **"Please Note:** We have a number of issues that need to be laid to rest before we can move ahead with award of the work." He set a deadline of April 16, 1998, for a "complete response."

In a fax to Hadaller later that day, Scherer suggested that Hadaller's subcontractor could not meet the requirement for 10 years of installing steel structures and that a substitution of contractors would violate the bid specifications. On April 16, 1998, the Port commission voted to reject Hadaller's bid as being "not responsible." The same day, the Port voted to award the project to Andrew Noel Construction, Inc., subject to approval by the architect.

The Port signed a contract with Noel Construction on April 29, 1998.[1]

Hadaller did not attempt to enjoin the award of contract to Noel Construction, but instead, after the contract with Noel had been signed, sued for damages for breach of contract. The Port moved for summary judgment, claiming that no oral contract was formed. The trial court granted summary judgment, and Hadaller appeals.

## ANALYSIS
### A. Summary Judgment

Hadaller first argues that the trial court erred in granting summary judgment because formation of an oral contract is a question of fact. Specifically, Hadaller argues that an issue of material fact exists as to whether an oral contract was formed when the Port voted to award him the contract or when Pehl told him the next day that he had been awarded the contract or bid.

■ ■ When reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Failor's Pharmacy v. Department of Soc. & Health Servs.*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994) (citing *Syrovy v. Alpine Resources, Inc.*, 122 Wn.2d 544, 548-49 n.3, 859 P.2d 51 (1993)). Our review is de novo. *Id.* at 493 (citing *Syrovy*, 122 Wn.2d at 548-49 n.3). We will affirm summary judgment if no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party. *Failor's*, 125 Wn.2d at 493 (citation omitted). But where reasonable minds could reach but one conclusion on the facts presented, summary judgment is appropriate. *Galbraith v. TAPCO Credit Union*, 88 Wn. App. 939, 946, 946 P.2d 1242 (1997) (quoting *Marquis v. City of Spokane*, 130 Wn.2d 97,

---

[1]Respondent states that the contract was signed on April 22, 1998. The record reflects that Noel Construction's bid bond was signed on April 22, 1998. The affidavit of Pehl indicates that the contract was signed on April 29, 1998.

105, 922 P.2d 43 (1996)), *review denied*, 135 Wn.2d 1006 (1998).

Hadaller relies on *Crown Plaza Corp. v. Synapse Software Systems, Inc.*, 87 Wn. App. 495, 962 P.2d 824 (1997) and *Garbell v. Tall's Travel Shop, Inc.*, 17 Wn. App. 352, 563 P.2d 211 (1977), for the proposition that "[d]isputes over the existence of oral agreements are not appropriately decided on summary judgment." *Crown Plaza*, 87 Wn. App. at 500 (citing *Garbell*, 17 Wn. App. at 354). But in both cases the parties disagreed over material facts and resolution of the disputes necessarily turned on the credibility of witnesses. *See Crown Plaza*, 87 Wn. App. at 501; *Garbell*, 17 Wn. App. at 355. Here, there is no genuine issue of material fact or credibility determination to be made. Rather the issue is whether a reasonable trier of fact, considering the statements made to Hadaller and the bid instructions, could find that an oral contract was formed.

### B. Formation of an Oral Contract

■ An invitation to bid on a public contract is not an offer to contract but a solicitation for an offer. *See Peerless Food Prods., Inc. v. State*, 119 Wn.2d 584, 595, 835 P.2d 1012 (1992) (citation omitted); *Mottner v. Town of Mercer Island*, 75 Wn.2d 575, 578, 452 P.2d 750 (1969). The contractor's bid is the offer to contract. *See J.J. Welcome & Sons Constr. Co. v. State*, 6 Wn. App. 985, 988, 497 P.2d 953 (1972).

■ To form a contract, the parties must mutually assent to the agreement. *Swanson v. Holmquist*, 13 Wn. App. 939, 942, 539 P.2d 104 (1975). In looking for mutual assent, we do not consider the parties' subjective intent. *Id.* at 942. Instead, we ascertain intent from the objective manifestations, the parties' statements and conduct. *See Plumbing Shop, Inc. v. Pitts*, 67 Wn.2d 514, 517, 408 P.2d 382 (1965). Here, the statements and conduct consist of the bid instructions and the representations made to Hadaller. *See id.* at 517-18.

■ Turning first to the bid instructions, they provide in part:

## ARTICLE 6—POST-BID INFORMATION

6.1 SUBMISSIONS

6.1.1 The Bidder shall, within fourteen (14) days of notification of selection for the award of a Contract for the Work, submit the following information to the Architects:

- A designation of the Work to be performed by the Bidder with his own forces.

- A list of the names of the Subcontractors . . . .

. . . .

6.1.2 The Bidder will be required to establish to the satisfactions of the Architect and the Owner the reliability and responsibility of the proposed Subcontractors . . . .

6.1.3 Prior to the award of the Contract, the Architect will notify the Bidder in writing if either the Owner or the Architect, after due investigation has reasonable objection to any person or entity proposed by the Bidder. . . .

Hadaller concedes that the 14-day period specified in 6.1.1 started at the earliest when the Port commissioners voted to award him the contract. And Article 6 clearly authorizes the Port to further investigate the reliability and responsibility of both the contractor and the proposed subcontractors after the low bidder has been selected "for the award of a Contract." Thus, the bid instructions contemplate a three-stage process: (1) selection of the low bidder for award of the contract, followed by (2) further investigation of the bidder and its subcontractors, followed by (3) contract formation. In light of this three-stage process, any reasonable fact finder could conclude only that either (1) no binding contract could be formed until the Port's investigation under Article 6 was completed, or (2) if a contract was formed by the selection procedure of 6.1.1, the Port could be excused from performance of the contract because the other provisions of Article 6 authorize investi-

gation and rejection of the contractor and its subcontractors. The nonoccurrence of a condition precedent excuses the promisee's performance under the contract. *See Jones Assocs., Inc. v. Eastside Properties*, 41 Wn. App. 462, 466, 704 P.2d 681 (1985) (citation omitted). Under section 6.1.2, Hadaller was required to establish to the Port's satisfaction the reliability and responsibility of its subcontractors. In either event, Hadaller does not have an enforceable contract with the Port.

■ But Hadaller argues that the Port must have waived the provisions of Article 6 that allow the Port to further investigate the contractor and subcontractors. Hadaller finds a waiver in the Port's investigation of the bidders before Hadaller was selected as the low bidder. But the bid instructions do not limit the number of documents the Port may obtain or the extent of its investigations. And the Port never suggested to Hadaller that it was waiving any further investigation under Article 6. In fact, the Port promptly asked Hadaller for further information on its subcontractor at the meeting the day after Hadaller was selected for award of the contract.[2] "[W]aiver is the intentional and voluntary relinquishment of a known right." *Jones v. Best*, 134 Wn.2d 232, 241, 950 P.2d 1 (1998). Waiver "will not be inferred from doubtful or ambiguous factors" but must be established by "unequivocal acts or conduct evidencing an intent to waive." *Id.* at 241 (citations omitted). In short, there is simply no evidence that the Port waived the provisions of Article 6.

■ Finally, Hadaller contends that, even if the Port were entitled to evaluate and reject one of its proposed subcontractors, the Port failed to follow section 6.1.3, which provides in part:

> If the Owner or Architect has reasonable objection to any person or entity, the Bidder may, at the Bidder's option, (1)

---

[2]The Port requested a 10-year list of satisfactory installations from Hadaller's subcontractor, a certification for the metal building manufacturer, and a 20-year manufacturer's warranty.

withdraw the Bid, or (2) submit an acceptable substitute person or entity with an adjustment in the Bid price to cover the difference in cost occasioned by such substitution. The Owner may accept the adjusted bid price or disqualify the Bidder.

Hadaller argues that the Port did not afford it the opportunity to submit an acceptable substitute. But a bidder on a public contract does not have an action for damages against the public agency for alleged irregularities in the bid process. *Peerless*, 119 Wn.2d at 595-96. Rather, such a bidder is limited to seeking an injunction before the contract is awarded to another contractor. *Dick Enters., Inc. v. King County*, 83 Wn. App. 566, 569-72, 922 P.2d 184 (1996). Although Hadaller argues that the public policy bar to an action for damages does not apply to his *contract* claim, he nevertheless contends that the Port failed to follow its own bid instructions under section 6.1.3. This claim is not based upon a contract but upon a bid irregularity— the Port's failure to follow its own bid instructions. Such an action is prohibited by public policy. *See Dick Enters.*, 83 Wn. App. at 569-70; *Peerless*, 119 Wn.2d at 596 (citing *Mottner*, 75 Wn.2d at 578). Thus, because Hadaller failed to seek an injunction during the 6 or 13 days[3] between its rejection and the signing of a contract with another bidder, Hadaller's claim for damages based upon the Port's alleged failure to follow section 6.1.3 is barred. *See BBG Group, LLC v. City of Monroe*, 96 Wn. App. 517, 982 P.2d 1176, 1179 (1999).

## C. Attorney's Fees

The Port requests fees under RCW 4.84.185, which allows recovery by the prevailing party if the nonprevailing party brings an action that is frivolous and advanced without reasonable cause. Because Hadaller's argument is not frivolous, the request for attorney's fees is denied.

---

[3]*See supra* note 1.

Affirmed.

SEINFELD and HUNT, JJ., concur.