[No. 24941-3-II.   Division Two.   August 25, 2000.]

MCFREEZE CORPORATION, ET AL., *Respondents*, v. THE
DEPARTMENT OF REVENUE, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *Cameron G. Comfort* and *Donald F. Cofer, Assistants,* for appellant.

*Richard P. Algeo* (of *Algeo, Clarke & Erickson, P.S.*), for respondents.

ARMSTRONG, C.J. — The McCollums owned 50 percent of the stock in a corporation whose sole asset was a $400,000 piece of realty. After purchasing the other 50 percent of stock, the McCollums attempted to pay excise tax on $200,000, the proportionate value of the realty corresponding to their purchase of 50 percent of the stock. A state statute requires the purchaser of a "controlling interest" in a corporation owning real estate to pay excise tax on "the true and fair value of the real property owned by the [corporation.]" RCW 82.45.030(2). Another statute defines "controlling interest" as "either fifty percent or more of the total . . . stock[.]" RCW 82.45.033(1). Under these statutes, the Department of Revenue (DOR) required the McCollums to pay excise tax on $400,000, the full value of the realty owned by the corporation.

In an action for a tax refund, the trial court granted summary judgment for the McCollums. Finding the statute

ambiguous, the court ruled that the McCollums owed tax on $200,000. DOR appeals, arguing that the language of the statute is unambiguous and sets the taxing rate on the full value of the realty owned by the corporation. Although this leads to incongruous results in certain sales, we agree. Accordingly we reverse and remand for entry for summary judgment in favor of DOR.

## FACTS

The McCollums and the Freezes each owned 50 percent interests in McFreeze Corporation. The corporation's only asset was a building worth $400,000.

In 1998, the McCollums purchased the Freezes 50 percent interest in the corporation for $200,000. The McCollums attempted to pay excise tax on this $200,000 ($3,560), but DOR insisted they pay tax on the entire $400,000 value of the real property. They paid the tax and brought a complaint for refund directly in the superior court under RCW 82.32.180.

On cross motions, the court granted summary judgment to the McCollums. In essence, the court found that the real estate excise tax (REET) statute was ambiguous. By looking to the legislative purpose, the court determined the tax should be on only the value obtained by the McCollums ($200,000) rather than on the value of the corporation's entire "real property" asset ($400,000). The court also awarded the McCollums attorney fees under the Equal Access to Justice Act, RCW 4.84.350. DOR appeals both rulings.

## ANALYSIS

### Real Estate Excise Tax Statute

■■ We review an order of summary judgment, as well as issues of statutory construction, de novo. *Enterprise Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 551-52, 988 P.2d 961 (1999); *Hadaller v. Port of Chehalis*, 97 Wn. App. 750, 754, 986 P.2d 836 (1999). The REET statute states:

(1) As used in this chapter, the term "selling price" means the true and fair value of the property conveyed. If property has been conveyed in an arm's length transaction between unrelated persons for a valuable consideration, a rebuttable presumption exists that the selling price is equal to the total consideration paid or contracted to be paid to the transferor, or to another for the transferor's benefit.

(2) If the sale is a transfer of a controlling interest in an entity with an interest in real property located in this state, the selling price shall be the true and fair value of the real property owned by the entity and located in this state. If the true and fair value of the real property located in this state cannot reasonably be determined, the selling price shall be determined according to subsection (4) of this section.

. . . .

(4) If the total consideration for the sale cannot be ascertained or the true and fair value of the property to be valued at the time of the sale cannot reasonably be determined, the market value assessment for the property maintained on the county property tax rolls at the time of the sale shall be used as the selling price.

RCW 82.45.030. The "controlling interest" of a corporation is defined as "either fifty percent or more of the total combined voting power of all classes of stock of the corporation entitled to vote, or fifty percent of the capital, profits, or beneficial interest in the voting stock of the corporation . . . ." RCW 82.45.033(1).

DOR argues that the analysis starts and ends with the plain language of RCW 82.45.030(2)[1] Under this analysis, the McCollums purchased a "controlling interest in an entity" (McFreeze) and, therefore, the "selling price" for purposes of taxation is "the true and fair value of the real

---

[1] "In judicial interpretation of statutes, the first rule is 'the court should assume that the legislature means exactly what it says. Plain words do not require construction.' " *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 329, 815 P.2d 781 (1991) (quoting *King County v. Taxpayers of King County*, 104 Wn.2d 1, 5, 700 P.2d 1143 (1985)). Thus, when construing an unambiguous statute the court looks to the wording of the statute, not to outside sources such as legislative intent. *Wascisin v. Olsen*, 90 Wn. App. 440, 443, 953 P.2d 467 (1997), *review denied*, 136 Wn.2d 1003 (1998).

property owned by" McFreeze (the value of the building, $400,000).

The McCollums argue that the statute is ambiguous, the statutory scheme should be read as a whole and in their (the taxpayer's) favor, and their interpretation fulfills the legislative intent and avoids absurd and incongruous results. They argue the statute requires the tax to be apportioned based upon the percentage of the corporation being purchased.

In particular, the McCollums argue RCW 82.45.030(2) must be read in conjunction with RCW 82.45.030(1) and, in so doing, the "ambiguity" in the statute becomes apparent. They argue as follows: (A) RCW 82.45.030(1) sets the "selling price" as total consideration paid in an arm's length transaction (here $200,000); (B) this definition of "selling price" applies to all subsections of RCW 82.45.030; (C) RCW 82.45.030(2) merely ensures that the "selling price" is based upon the corporation's "real property" and does not include any additional assets of the corporation (such as inventory and equipment). To demonstrate the effect of a different interpretation, the McCollums note that if this were simply individuals purchasing the remaining joint interest in a piece of land, sans the corporate shell, the "selling price" under RCW 82.45.030(1) and (2) would be only $200,000. Simply by adding the corporate form, essentially the same transaction results in taxation of twice this amount. Therefore, the McCollums argue, the statute is ambiguous.

■ ■ A statute is ambiguous if it can be reasonably interpreted in more than one way. *Vashon Island Comm. for Self-Gov't v. Washington State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995). While a statute is ambiguous if it is susceptible to two or more reasonable interpretations, we are not obliged to find an ambiguity by imagining a variety of alternative interpretations. *State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999).

■ ■ The REET statute is not ambiguous; it uses plain language and defines essential terms. Therefore, we look only to the statutory language for legislative intent. The

statute defines "selling price" in two ways. Under RCW 82.45.030(1), the selling price is the true and fair value of the property conveyed, presumptively the consideration paid. But RCW 82.45.030(2), the more specific subsection dealing with the transfer of a controlling interest in an entity owning real estate, defines "selling price" as the "true and fair value of the real property owned by the entity . . . ." Thus, in the sale of an entity, the value taxed is not the consideration paid, but the value of the real estate owned by the entity. There is simply no ambiguity in this. Further, nothing in the statutes authorizes the taxpayer to apportion the tax as the McCollums suggest. If the sale is 49 percent or less of the entity, no tax is owed. But if the sale is 50 percent or more, tax is owed on the full value of the real estate owned by the entity. Because the McCollums purchased a "controlling interest" in a corporation whose only asset is a building worth $400,000, they owe tax on the full value of the real estate under RCW 82.45.030(2).

██ We recognize, as does DOR, that the plain wording of the statute will lead to odd results. For example, if the McCollums had purchased both halves of the corporation in separate sales, they would be taxed twice on the full value of the corporation. This, however, is a problem to be addressed by the Legislature. We are not free to disregard the plain meaning of the statute to avoid an incongruous result. *See State v. Olson*, 31 Wn. App. 403, 406, 642 P.2d 410 ("the court may not resort to judicial construction in order to rectify what may appear to be an unfair and injudicious result."), *review denied*, 97 Wn.2d 1023 (1982).

Because the McCollums are not a prevailing party under our decision, we need not address the arguments on the trial court's award of attorney's fees.

We reverse the summary judgment for McCollums and remand for entry of summary judgment in favor of the DOR.

SEINFELD and HOUGHTON, JJ., concur.