[No. 24701-5-III.   Division Three.   December 28, 2006.]

EVANS & SON, INC., *Appellant*, v. THE CITY OF YAKIMA, *Respondent*.

*Charles C. Flower* and *Patrick M. Andreotti*, for appellant.
*Robert C. Tenney* and *Andrew W. Heinz*, for respondent.

¶1 SWEENEY, C.J. — An exchange of correspondence can certainly constitute a binding contract provided that all the material terms are agreed upon and the parties intend that the exchange of correspondence be their agreement. Here, questions of fact remain, however, over whether the parties to this settlement agreement intended their exchange of correspondence to be their agreement and whether they agreed on all of the material terms of their contract. We therefore reverse the trial court's summary dismissal of the contractor plaintiff's suit for damages against the city of Yakima.

## FACTS

¶2 The city of Yakima (City) and Evans & Son, Inc., contracted for the development of Kissel Park on February 29, 2002. The contract required "deep tilling." The City was instructed that deep tilling was not necessary in an area of the park. The project supervisor for the City instructed Evans to stop deep tilling until the City directed otherwise.

¶3 The City delayed its response. The delays interrupted Evans' critical path. Evans said it lost $153,522.84. The City offered to settle for $40,000 in a letter dated September

23, 2004. The offer also said that "[s]ettlement is contingent on execution of a Settlement Agreement that I will draft." Clerk's Papers (CP) at 94. Evans' attorney accepted the $40,000 offer "to resolve all issues pertaining to the Kissel Park construction contract." CP at 97. Evans' lawyer requested a copy of the settlement and release agreement that the City's attorney had drafted.

¶4 The City's attorney sent a draft of the settlement agreement. Evans' lawyer revised the agreement. The City's attorney again reminded Evans that "[s]ettlement is contingent on execution of a Settlement Agreement that I will draft." CP at 11. And other letters from the City's attorney requested appropriate signatures before returning the settlement contract.

¶5 Evans found the release provision set out in the City's proposed agreement unacceptable. It concluded that the provision did not limit the settlement to only Evans' delay damage claim on the park construction project. The release included, instead, a provision that released any and all claims Evans might have against the City:

> In consideration of the Forty Thousand Dollars ($40,000.00) settlement check described in Paragraph 1 of this Agreement and the mutual releases set forth in this agreement, MR. EVANS and EVANS AND SON, and each of its current and former officers and employees do hereby irrevocably and forever release, acquit, and discharge CITY, its elected officials, officers, directors, agents, attorneys, employees, successors, and assigns, of and *from any and all liabilities, claims, cross claims, counterclaims, actions, suits, damages, penalties, costs, losses, expenses, interest, court costs, and attorney's fees of any kind or nature whatsoever, known or should be known, suspected or should be suspected, existing as of this date.*

CP at 47 (emphasis added).

¶6 The legal department of Yakima sent a check to the City's attorney payable to Evans, along with a letter stating that: "[w]e assume you will deliver this settlement check when you have received the signed Settlement and Full Release Agreement." CP at 130. Evans refused to sign the

settlement agreement. And the check apparently was never sent.

¶7 Evans sued the City for delay damages. The City moved to dismiss the complaint, arguing that the claim had already been settled. The court concluded that the case had been settled, granted the City summary judgment, and dismissed the suit.

## DISCUSSION

### SETTLEMENT AGREEMENT

¶8 Evans assigns error to the judge's conclusion that the parties, through their lawyers, had reached an agreement. It argues that the settlement discussions clearly anticipated a written settlement agreement and release before the deal was finalized. And Evans never approved the settlement agreement and disagreed with the categorical language of the release.

¶9 The City responds that the exchange of correspondence here can lead to only one conclusion—the parties settled this case for $40,000. The City argues that it acceded to all of Evans' requests and changed the settlement and release agreement accordingly. In sum, the City says there was a meeting of the minds here and this was a done deal.

¶10 We review the trial court's grant of summary judgment de novo. *Hadaller v. Port of Chehalis*, 97 Wn. App. 750, 754, 986 P.2d 836 (1999). To affirm, we must conclude that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Richardson v. Denend*, 59 Wn. App. 92, 94-95, 795 P.2d 1192 (1990). We also view the facts and reasonable inferences in the light most favorable to the nonmoving party. *Hadaller*, 97 Wn. App. at 754.

¶11 We apply a three-part test to decide whether informal writings such as these letters rise to the level of a formal contract. *Morris v. Maks*, 69 Wn. App. 865, 869, 850 P.2d 1357 (1993). We must be able to conclude that the

parties agreed to the subject matter; all of the provisions of the agreement were set out in the writings; and "the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract." *Id.* (citing *Loewi v. Long,* 76 Wash. 480, 484, 136 P. 673 (1913)).

¶12 Certainly, the parties agreed that the subject matter of any agreement was the settlement of claims from the park project. But as to the second requirement—that the writings include all of the provisions of the agreement—genuine issues of material fact remain. The only material term agreed upon in the letters was the amount of the settlement. The amount for the retainage on the park project was not agreed upon in the letters. The City did not have the authority to release the retainage until certain statutory requirements were met. *See* RCW 60.28.051; RCW 39.12.040; RCW 60.28.010.

¶13 Evans' attorney stated that they understood "the $40,000 resolves all claims made by my client for expenses associated with the City of Yakima's delay relating to the deep tilling." CP at 26. But the draft release agreement sent by the City was broader:

> MR. EVANS and EVANS AND SON . . . do hereby irrevocably and forever release, acquit, and discharge CITY . . . from any and all liabilities, claims, cross claims, counterclaims, actions, suits, damages, penalties, costs, losses, expenses, interest, court costs, and attorney's fees of any kind or nature whatsoever, known or unknown, suspected or unsuspected, whether they are based on tort, contract or any other theory . . . up to the date of the signing of this Settlement and Full Release Agreement including all past contracts, projects, or work for the CITY including but not limited to the Kissel Park and any other projects.

CP at 101.

¶14 Evans' attorney objected. The City changed the release language. A later draft of the release would have provided that Evans forever release the City from "all liabilities, claims, cross claims . . . damages, penalties, costs, losses . . . of any kind or nature whatsoever, known or

should be known, suspected or should be suspected, existing as of this date." CP at 125. Evans objected to this language. It intended that the $40,000 settle delay damages on the park project *only*. And it claimed "additional potential, unrelated claims against the City" that it was unwilling to release. CP at 24.

¶15 Settlement agreements are contracts. And so we apply general principles of contract law. *Morris*, 69 Wn. App. at 868. A valid contract requires a meeting of the minds on the essential terms. *McEachren v. Sherwood & Roberts, Inc.*, 36 Wn. App. 576, 579, 675 P.2d 1266 (1984). We conclude that there is a genuine issue of material fact whether there was a meeting of the minds concerning the scope of the release. Evans intended to release the City from the park project delay damages only. Arguably, the City's various drafts of the release include language broader than that.

¶16 The third prong of this analysis requires us to consider whether Evans and the City intended that their exchange of correspondence be their agreement. Or, at least, it requires Evans to show a question of fact as to its intention. Both parties must intend to create a binding agreement before the signing of a formal contract. *Morris*, 69 Wn. App. at 872. And, again, here there are questions of fact.

¶17 The City's attorney writes on September 23, 2004: "[s]ettlement is contingent on execution of a Settlement Agreement that I will draft." CP at 11. Other letters from the City's attorney request that all "required signatures" be obtained. CP at 12, 13. The City's legal department assumes its lawyer "will deliver this settlement check when you have received the signed Settlement and Full Release Agreement." CP at 15. Evans' lawyer writes that "my client, Evans & Son, Inc. accepts the City's offer of settlement of $40,000 to resolve all issues pertaining to the Kissel Park construction contract." CP at 26.

¶18 The letters show the parties desire to reach a settlement, the amount for the settlement, and the expectation

that a settlement and release will be signed. But there is no suggestion here that the letters themselves are the binding agreement. There are, then, questions of fact when we view the evidence in a light most favorable to Evans. *Hadaller*, 97 Wn. App. at 754.

¶19 The City relies on *Morris v. Mak* for the proposition that the exchange of correspondence was an enforceable agreement. *Morris*, 69 Wn. App. 865. But *Morris* is distinguishable. The letters in *Morris* address all the material terms. *Id.* at 869. Those letters addressed specific settlement issues in detail:

"1. Evan Morris will transfer his entire interest in Maks Wood Products to Tom Maks or assigns.

"2. Tom Maks and Maks, Inc. will each transfer their entire ownership interest in TRM to Evan Morris or assigns.

"3. Evan Morris will assume all TRM liabilities.

"4. Tom Maks will assume all Maks Wood Products liabilities.

"5. Evan Morris will pay $110,000 in cash to Tom Maks at closing.

"6. Evan Morris or assigns will receive all of the TRM assets, except for the following, which will be retained by Tom Maks: ". . . .

"7. Evan Morris will transfer to Tom Maks his ownership interest in Maks Sawmill, Inc. . . .

"8. Ferguson & Burdell's fees through July 3, 1991 will be paid by TRM."

*Id.* at 870 n.1 (quoting July 19, 1991 letter).

¶20 Here, the settlement amount of $40,000 was set. But Evans' attorney explicitly stated his intention to limit the release to the park project. And subsequent drafts of the settlement and release agreement do not reflect that.

¶21 Moreover, in *Morris*, the client himself signed a letter confirming a settlement. The client signed and acknowledged a letter from his bank that stated, " '[i]t is our understanding that you and Evan Morris have reached a

settlement, the outline of which is provided in a letter dated July 19, 1991.'" *Id.* at 871 (quoting July 24, 1991 letter). Here, Evans did not sign or acknowledge a settlement agreement. Nor do the letters outline the details of the settlement. And, of course, when Evans learned of the release provision in the settlement agreement, it refused to sign.

¶22 The parties in *Morris* clearly intended to be bound by the correspondence: " 'This will confirm your assurance to me that Tom Maks has agreed to this settlement and I have confirmed Evan Morris' approval.'" *Id.* (quoting July 19, 1991 letter). Another letter written by Maks' attorney stated that the July 19 letter accurately reflected the terms of the agreement. Third, Maks signed and acknowledged a letter from his bank that he had settled the case with Morris. The intention to be bound by the settlement was clear in the letters in *Morris*. That was not the case here.

¶23 The letters in this case show efforts to reach a settlement and the amount agreed upon. But whether the correspondence was a binding agreement before the signing and execution of the settlement contract that provided all the material terms is a question of fact.

¶24 Questions of fact remain over whether the exchange of correspondence here was the agreement between these parties. And we therefore reverse the summary dismissal of Evans' complaint.

SCHULTHEIS and BROWN, JJ., concur.

Reconsideration denied March 14, 2007.