IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THOMAS REGER, an individual, | No. 83529-7-I |
| Appellant, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| DELL MARKETING L.P., | |
| Respondent. | |

SMITH, A.C.J. — Thomas Reger sued Dell Marketing LP (Dell) after it denied Reger's attempt to transfer a warranty for a Dell server that Reger purchased through an auction. Reger appeals the trial court's summary dismissal of his claims. Finding no error, we affirm.

FACTS

In October 2020, Reger purchased a Dell "PowerEdge FX2" server through an online auction. According to Reger's later declaration, he "inspected the server in person" before purchasing it and "found [it] to be brand new with all of its warranty and support papers unopened." Additionally, it "appeared to [Reger] based on a sticker on the side of the box that the server was being auctioned off on behalf of a company called Oak Harbor Freight." Reger declared that he checked Dell's website before purchasing the server, and according to the website, Dell's warranty for the server was valid until March 3, 2023. Reger also declared that he "checked the Dell website on the

transferability of the warranty and understood the warranty was transferable."

The record reflects that Reger paid approximately $4,800 for the server ($3,805.00 plus a 15 percent "Buyer's Fee" and 10.2 percent sales tax). He later "attempted several times to transfer the warranty/ownership of the server" using Dell's website, but "all attempts were denied."

In early 2021, Reger initiated this lawsuit against Dell. Reger alleged that the server he purchased "is currently sold on Dell's website for in excess of [$]50,000" and "[t]he server's value is derived from high reliability, extreme performance and arguably most important, 'Johnny on the spot support'." He alleged that "Dell's refusal to transfer the warranty diminished the value of the server by over [$]32,000" and that he "was forced to sell the server on Ebay.com, admitting th[at] Dell would not transfer warranty, obliterating the true value of the server." Reger also alleged that "Dell has a business practice of commencing server and consumer warranties when Dell ships the server, prior to the buyer possessing the server."

Reger asserted an unspecified cause of action, as follows:

4.1 Dell publishes to the public the status of Dell server warranties on their website.

4.2 Dell publishes the warranty transfer process to the public on their website.

4.3 Plaintiff relied upon Dell's publicly published Dell warranty status and warranty transfer policy before purchasing the server.

4.4 Plaintiff evaluated the value of the server relying on Dell's publishing of the warranty validity and Dell's policy of transferring the warranty.

4.5 Dell's refusal to transfer the warranty . . . ultimately diminished the value of the server by [$]32,000.

> 4.6     Dell starts their "warranty clock" and "service agreement clocks" prematurely, swindling their customers out of valuable days of warranty protection.

Reger also asserted a cause of action for violation of the Consumer Protection Act (CPA),[1] premised on Dell's "prematurely starting . . . the 'warranty clock' before the product is in the consumer's possession." Reger sought injunctive relief "stopping the shortening of advertised warranty coverage," as well as actual damages of $32,000 and $25,000 in punitive damages under RCW 19.86.090.[2]

In August 2021, Dell moved for summary judgment on all of Reger's claims. Dell contended that to the extent Reger's complaint stated a claim for breach of contract, "Reger cannot prove the existence of any contract between himself and Dell." Dell presented evidence that the server at issue was sold through a Dell reseller, IT1 Source, to a company called "Intermedia," for shipment to an address in Seattle. Dell also presented evidence that Intermedia never received the server and, on March 31, 2020, Dell submitted a "loss or damage claim" to the shipping company, Mach 1 Global Services, Inc. (Mach 1). Dell pointed out there was no evidence the online auction site through which Reger purchased the server was affiliated with Dell, and it argued that Reger's breach of contract claim failed because "[c]ontracts require mutual assent and consideration [and] Reger cannot show any evidence of mutual assent, and there is absolutely no consideration . . . between himself and Dell."

---

[1] Chapter 19.86 RCW.

[2] RCW 19.86.090 authorizes an award of treble damages for CPA violations, provided that "such increased damages award for violation of RCW 19.86.020 [prohibiting unfair or deceptive acts or practices in the conduct of trade or commerce] may not exceed twenty-five thousand dollars."

Dell also observed that Reger's complaint could be read to allege causes of action for promissory estoppel and breach of warranty, and that both of those claims also failed as a matter of law. And Dell argued that Reger lacked standing to assert a CPA claim and, in any event, failed to raise a genuine issue of material fact as to the elements of such a claim.

The trial court granted Dell's motion for summary judgment and dismissed Reger's complaint with prejudice. Reger appeals.

ANALYSIS

Summary Judgment Standard

"Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rublee v. Carrier Corp., 192 Wn.2d 190, 198, 428 P.3d 1207 (2018). Where, as here, the defendant moves for summary judgment based on the absence of evidence to support an essential element of the plaintiff's case, the plaintiff must "present admissible evidence demonstrating the existence of a genuine issue of material fact" to defeat summary judgment. Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 351, 144 P.3d 276 (2006). "A material fact is one upon which the outcome of the litigation depends." Gull Indus., Inc. v. Granite State Ins. Co., 18 Wn. App. 2d 842, 893, 493 P.3d 1183 (2021), review denied, 199 Wn.2d 1007 (2022).

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. Nichols v. Peterson Nw., Inc., 197 Wn. App. 491, 498, 389 P.3d 617 (2016). In so doing, we consider the evidence and all

4

reasonable inferences therefrom in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "We may affirm on any basis supported by the record whether or not the argument was made below." Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

## CPA Claim

Reger contends that the trial court erred by summarily dismissing his CPA claim. We disagree.

To prevail on his CPA claim, Reger had to establish five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Reger's claim fails on the first element, i.e., whether Dell was engaged in a deceptive act or practice.

"Whether an act is . . . deceptive under the CPA is a question of law." State v. LA Inv'rs, LLC, 2 Wn. App. 2d 524, 538, 410 P.3d 1183 (2018). " 'Deception exists if there is a representation, omission, or practice that is likely to mislead a reasonable consumer.' " State v. Mandatory Poster Agency, Inc., 199 Wn. App. 506, 518-19, 398 P.3d 1271 (2017) (internal quotation marks omitted) (quoting Rush v. Blackburn, 190 Wn. App. 945, 963, 361 P.3d 217 (2015)). While the CPA does not define "deceptive," " 'the implicit understanding is that the actor *misrepresented* something of material importance.' " Mandatory Poster Agency, 199 Wn. App. at 519 (internal quotation marks omitted) (quoting

5

State v. Kaiser, 161 Wn. App. 705, 719, 254 P.3d 850 (2011)).

Here, Reger asserts that "Dell activat[es] the warranty upon shipment and not at delivery," i.e., "days if not weeks before the product is owned and in the possession of the consumer," and "this is a deceptive business practice" under the CPA. But Reger fails to explain why a reasonable consumer would believe that the warranty term begins at possession, so as to be misled if it begins earlier. It is undisputed that Dell's warranty expressly states that it "begins on the date of the packing slip, invoice, receipt or other sales documentation" for hardware purchased directly from Dell, and "on the date of your original sales receipt" for hardware purchased from third-party retailers or resellers. Meanwhile, Reger points to no evidence that Dell otherwise represents to consumers that the warranty begins only upon possession. Reger fails to establish that Dell's starting the warranty term before the customer's possession is deceptive, and thus, his CPA claims fails as a matter of law.

Reger disagrees and points out that a Dell employee testified that Dell transferred title to the server when it was shipped, but the same employee also testified that Dell's "Reseller Terms of Sale" (Reseller Terms) applied to the sale of the server. According to Reger, the Reseller Terms "state[ ] title transfers upon delivery to the consumer," thus conflicting with the Dell employee's testimony and creating a genuine issue of material fact. But even assuming Reger's interpretation of the Reseller Terms is correct,[3] he points to no evidence

---

[3] We note that contract interpretation is a matter of law, and in construing a contract, we view the contract as a whole. Int'l Marine Underwriters v. ABCD

in the record that Dell represented to consumers that the warranty term does not start until title passes. Hence, any conflict between the Dell employee's testimony and the Reseller Terms is not material. The trial court did not err in dismissing Reger's CPA claim.

<u>Denial of Warranty Transfer</u>

CPA claim aside, the thrust of Reger's complaint was that Dell had an obligation to approve Reger's warranty transfer, and Dell's refusal to do so diminished the value and marketability of the server, causing damages to Reger. Dell argued below that Reger's claims were grounded in breach of contract, promissory estoppel, or breach of warranty. Reger did not argue otherwise below, nor does he argue otherwise on appeal. Therefore, to establish a basis for appellate relief based on Dell's refusal to transfer the warranty to him, Reger must show that the trial court erred by summarily dismissing Reger's breach of contract, promissory estoppel, or breach of warranty claim. <u>See</u> RAP 9.12 ("On review of an order granting . . . a motion for summary judgment the appellate court will consider only . . . issues called to the attention of the trial court."). Reger fails to do so.

To prove a breach of contract claim, a plaintiff must demonstrate "that there exists a contract imposing a duty on the defendant," that the defendant failed to perform that duty, and that the failure damaged the plaintiff. <u>Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC</u>, 139 Wn App. 743, 757 n.3, 162

_____

<u>Marine, LLC</u>, 179 Wn.2d 274, 282-83, 313 P.3d 395 (2013). But here, the record contains only a partial excerpt of the Reseller Terms.

P.3d 1153 (2007). For a contract to exist, there must be mutual assent, i.e., the parties must " 'manifest to each other their mutual assent to the same bargain at the same time.' " Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 48, 470 P.3d 486 (2020) (internal quotation marks omitted) (quoting Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 388, 858 P.2d 245 (1993)); see also Swanson v. Holmquist, 13 Wn. App. 939, 942, 539 P.2d 104 (1975) ("In the absence of mutual assent there can be no contract."). "Mutual assent cannot be based upon subjective intent, but rather must be founded upon 'an objective manifestation of mutual intent on the essential terms of the promise.' " Swanson, 13 Wn. App. at 942 (quoting Peoples Mortg. Co. v. Vista View Bldgs., 6 Wn. App. 744, 747, 496 P.2d 354, 357 (1972)).

Additionally, "[e]very contract must be supported by a consideration," i.e., an "act, forbearance, creation, modification, or destruction of a legal relationship, or return promise" that is "bargained for and given in exchange for the promise." King v. Riveland, 125 Wn.2d 500, 505, 886 P.2d 160 (1994). "Without consideration present, there is no valid contract." King, 125 Wn.2d at 506.

Here, Reger presented no evidence that he and Dell bargained for anything, much less that there was mutual assent between himself and Dell that Dell would approve a warranty transfer for the server in exchange for some form of consideration. While Reger argues that Dell "offered to transfer the warranty, in exchange for Reger's personal contact information," Reger makes this

8

argument for the first time on appeal,[4] and in any event, he points to no evidence in the record of such an offer. Cf. Pac. Cascade Corp. v. Nimmer, 25 Wn. App. 552, 556, 608 P.2d 266 (1980) ("An offer consists of a promise to render a stated performance in exchange for a return promise being given."). Furthermore, and as Dell points out, Reger presents no evidence of any consideration flowing from Reger to Dell. Reger failed to raise a genuine issue of material fact as to the existence of any contract between himself and Dell.

Reger also failed to raise a genuine issue of material fact as to his promissory estoppel claim. "Promissory estoppel renders a promise made without consideration enforceable." Elliott Bay Seafoods, Inc. v. Port of Seattle, 124 Wn. App. 5, 12-13, 98 P.3d 491 (2004). " 'A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.' " Sloma v. Wash. State Dep't of Ret. Sys., 12 Wn. App. 2d 602, 622, 459 P.3d 396 (2020) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 2(1) (AM. LAW. INST. 1981)). A plaintiff alleging promissory estoppel must establish " 'the existence of a promise' that is 'clear and definite.' " Sloma, 12 Wn. App. 2d at 622 (quoting Havens v. C&D Plastics, Inc., 124 Wn.2d 158, 172-73, 876 P.2d 435 (1994)).

Here, Reger declared that he "checked the Dell website on the transferability of the warranty and understood the warranty was transferable." Reger's declaration did not specify what it was about the Dell website that

---

[4] Under RAP 2.5(a), this court may refuse to review an argument raised for the first time on appeal.

caused Reger to understand the warranty was transferable, but we presume he relied on Dell's online "Ownership Transfer and Dell Product Registration Guides," an excerpt of which Reger attached to his declaration with the following language highlighted:

> Was the System purchased second hand, through an auction website or third-party company?
>
> In order to take advantage of any remaining warranty (if applicable) for a Dell EMC System purchased through an auction site or through a third party, you must complete the transfer of ownership form by providing the following pieces of information:
>
> - Previous Owner Information
> - Service Tag and Express Code

Although the foregoing statement in Dell's online "guide" sets forth certain steps a person must take to "take advantage of any remaining warranty," it does not constitute a "clear and definite" promise to Reger that Dell would approve a warranty transfer for the server at issue. At best, it provides general guidance. Cf. Sloma, 12 Wn. App. 2d at 611, 622 (where retired state employee reentered state employment, Department of Retirement Systems (DRS) did not make a "clear and definite" promise to recalculate state employee's retirement benefits based on his new salary even where DRS stated there was no minimum number of months he would need to work for his new salary to be considered in his benefits calculation; DRS's statement constituted only "general information and guidance" and not a manifestation of intention to act in a specified way).

Furthermore, to obtain recovery based on promissory estoppel, a plaintiff must show that he justifiably relied on the defendant's promise " 'in such a manner that . . . injustice can be avoided only by enforcement of the promise.' "

Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc., 169 Wn. App. 111, 127, 279 P.3d 487 (2012) (quoting Elliott Bay Seafoods,124 Wn. App. at 13).  It is undisputed that Reger purchased the server at issue through an auction, and even Reger declared that it appeared to him the server was being sold not on behalf of Dell, but on behalf of a freight company.  Also, it is undisputed that Reger purchased the server for less than one-tenth of what he claimed was the server's retail price.  And according to Reger's own correspondence in the record, Reger "bought [the server] to resell and try to make a buck."  Under the circumstances, Reger cannot show that his conclusion the warranty would be transferable was justified, much less that Dell's refusal to transfer the warranty to Reger would result in an injustice.  Cf. Kim v. Dean, 133 Wn. App. 338, 345, 135 P.3d 978 (2006) (promissory estoppel is equitable in nature); Ahmad v. Town of Springdale, 178 Wn. App. 333, 342, 314 P.3d 729 (2013) (observing that "[e]quitable remedies are extraordinary forms of relief").  Reger's promissory estoppel claim fails as a matter of law.

Finally, although Reger's complaint did not appear to allege that the server failed to conform to any express or implied warranty, Dell nevertheless characterized Reger's complaint as raising a breach of warranty claim.  But as Dell went on to point out, either contractual privity or third-party beneficiary status is required to maintain such a claim.  See Lidstrand v. Silvercrest Indus., 28 Wn. App. 359, 362-63, 623 P.2d 710 (1981) ("Washington courts have consistently required privity of contract between the parties in actions founded upon warranty. The requisite privity may be established for an intended third party beneficiary of

a warranty, however, without showing a direct contractual relationship between seller and ultimate user." (internal citation omitted)). Reger points to no authority to the contrary, and as already discussed, Reger failed as a matter of law to establish the existence of a contract between himself and Dell. Additionally, Reger points to no evidence that he was an intended third-party beneficiary of Dell's limited warranty. Indeed, it is undisputed that Dell's warranty expressly states that "Dell cannot guarantee the authenticity of the products, limited warranties, service or support, or the accuracy of the listings of products you purchase from a third party" and gives Dell the "sole discretion" to approve warranty transfers.

In sum, the trial court did not err by dismissing Reger's breach of contract, promissory estoppel, and breach of warranty claims. Therefore, the trial court also did not err by summarily dismissing Reger's complaint.

Reger disagrees and contends that reversal is required because Dell stated below that the server's warranty would still be valid as to a "rightful owner," and there remains a genuine issue of material fact as to whether Reger was the legitimate owner of the server. Relying again on the Reseller Terms, Reger argues that because the server was never delivered to IT1 Source or Intermedia, "title never changed" to either of those entities. According to Reger, this means there remains a genuine factual dispute as to whether Reger obtained legitimate ownership of the server through a "chain of title" that began with Mach 1, the company Dell used to ship the server. Reger points out that "[t]he record reflects the shipping company Mach[ ]1 had a contractual right to sell the server at a

public auction if their bill was unpaid," and "Dell has not produced any document that indicates Dell paid Mach[ ]1 shipping."

But even assuming again that Reger's interpretation of the Reseller Terms is correct, and assuming further that Mach 1 had a contractual arrangement with Dell under which Mach 1 was authorized to—and did—sell the server, Reger did not purchase the server from Mach 1, and he points to no evidence whatsoever revealing how the server ended up with the auction company that actually sold the server to Reger, apparently on behalf of Oak Harbor Freight. Below, Reger speculated that Mach 1 "subcontracted all or at least a portion of the server[']s transport to Oak Harbor Freight" and asserted that Oak Harbor Freight "clearly believed they had a contractual or legal right to sell this server at public auction," but " 'speculation and conclusory statements will not preclude summary judgment.' " Strauss v. Premera Blue Cross, 194 Wn.2d 296, 301, 449 P.3d 640 (2019) (quoting Volk v. DeMeerleer, 187 Wn.2d 241, 277, 386 P.3d 254 (2016)). Reger's theory that he obtained "legitimate ownership" via Mach 1 does not raise a genuine issue of material fact.

As a final matter, Reger suggests that the trial court was required to accept as true his theory that he obtained "legitimate ownership" through Mach 1. Specifically, quoting from Becker v. Community Health Systems, 184 Wn.2d 252, 257-258, 359 P.3d 746 (2015), Reger asserts that "[i]n ruling on a motion to dismiss, '[f]actual allegations are accepted as true, and unless it appears beyond doubt that the plaintiff can prove no set of facts consistent with the complaint that would entitle him or her to relief, the motion to dismiss must be denied.' " Becker

involved a motion to dismiss under CR 12(b)(6), see 184 Wn.2d at 257, and in that context, the trial court does indeed accept all allegations in the complaint as true. But to overcome summary judgment under CR 56, Reger needed to present *admissible evidence*—not just unsupported allegations—establishing the existence of a genuine issue of material fact. See Keck v. Collins, 181 Wn. App. 67, 90, 325 P.3d 306 (2014) (party opposing summary judgment "must present admissible evidence showing a genuine issue of material fact exists" and " 'may not rest upon the mere allegations or denials of his pleading' " (quoting CR 56(e)). This Reger failed to do.

We affirm.

_Smith, A.C.J._

WE CONCUR:

_Bowman, J._          _Dwyer, J._